**In re ADOPTION OF A MINOR.**
**No. 12549.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 28, 1955.

Decided July 7, 1955.

Mr. Joseph Forer, Washington, D. C., with whom Mr. David Rein, Washington, D. C., was on the brief, for appellants.

Before BAZELON, DANAHER and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

This is an appeal from the District Court's denial of a petition for adoption of a child, filed by the natural mother [1] and stepfather. Petitioners' pertinent allegations are: The child was born out of wedlock in 1949. The natural father, who is white, has never supported the child and his whereabouts are unknown. The mother, a housewife, is white; she consents to adoption by the stepfather, a Negro, whom she married in 1951. The child has no income or property and has lived with petitioners since their marriage. The stepfather is a taxicab driver by occupation. He and his wife have supported and carefully reared the child as their own.

The District Court referred the petition to the Board of Public Welfare for investigation and recommendation pursuant to former § 16–201 of the District of Columbia Code.[2] Noting that the "al-

---

1. The law in effect at the time this petition was filed required that (1) the "petitioner's spouse [join] in the petition or [consent] to the adoption"; (2) the natural mother consent. D.C.Code, §§ 16–201, 16–202 (1951), later repealed, 68 Stat. 246 (1954). The mother's joinder and notation of consent here were apparently an effort to comply with both requirements. The new adoption act passed in 1954 retains the requirement of consent but eliminates the necessity of joinder by a petitioner's spouse who is a natural parent of the adoptee. 68 Stat. 241, D.C.Code, § 16–211 (Supp.1954).

2. That section, as part of the old adoption law, was repealed after the institution

legations of the petition are true," the Board reported the following additional information. Two children have been born of petitioners' marriage. The couple are "equally fond of the three children," all of whom "appear well cared for." This observation was supported by letters of reference which indicated that "petitioners are happily married and are giving loving care to their three children." The stepfather attended law school for three years and expects to complete his studies as soon as he is financially able. He and his wife live in a Government housing project at a rental of $44 per month. Their home is adequately furnished and clean. Because of their refusal "to sign the loyalty declaration required of all tenants in Federal Housing," their eviction was ordered in Municipal Court proceedings.

The Board recommended "that the prayers of the petition be granted, if the court rules that a decision can be made while the eviction issue involving loyalty declaration is still unsettled." The District Court observed, in its memorandum opinion, that "Ordinarily such an adoption [of a child born out of wedlock] should be not only approved but encouraged." But it felt constrained to deny adoption here because of "two serious circumstances":

"It appears from the report of the Department of Public Welfare that the parents * * * have refused to sign the loyalty declaration required of all tenants in [Federal housing] projects * * *

"Another problem arises out of the fact that the stepfather is a colored man, while the mother and boy are white people. This situation gives rise to a difficult social problem. The boy when he grows up might lose the social status of a white man by reason of the fact that by record his father will be a negro if this adoption is approved. I feel the court should not fashion the child's future in this manner."

■ We hold that denial of the adoption petition is erroneous and requires reversal. This proceeding is governed by former § 16–203 of the District of Columbia Code.[3] That section provided:

"After considering the petition, the consents, and such evidence as the parties and any other properly interested person may wish to present, the court may enter a final decree of adoption if it is satisfied (a) that adoptee is physically, mentally, and otherwise suitable for adoption by the petitioner; (b) that the petitioner is fit and able to give the adoptee a proper home and education; and (c) that the change will be for the best interests of adoptee."

Under this statute, the "primary duty" of the District Court is "to determine the best interests of the infant."[4] Petitioners' refusal "to sign the loyalty declaration"—that they are not members of any of the organizations listed by the Attorney General under authority of Executive Order 9835, 5 U.S.C.A. § 631 note[5]—provides no support for a deter-

---

of this proceeding. This case is unaffected by the repeal. The 1954 adoption act provides that "* * * all proceedings instituted and pending [on the date of enactment of this Act] shall be carried to their final determination in accordance with former sections 16–201 to 16–207 * * *." D.C.Code, § 16–225 (Supp.1954).

3. This section, like § 16–201, was repealed after this suit began, but the validity of this proceeding is not impaired. Note 2, supra. In substance, former § 16–203 was re-enacted in the new adoption act. 68 Stat. 244, D.C.Code, § 16–218(b) (Supp.1954).

4. In re Adoption of a Minor, 1944, 79 U.S. App.D.C. 191, 199, 144 F.2d 644, 652, 156 A.L.R. 1001.

5. 3 C.F.R. 129, 132 (Supp.1947). This loyalty declaration was requested by the Public Housing authorities purporting to act under the Gwinn Amendment which provides that no housing unit constructed under the United States Housing Act of 1937, as amended, "shall be occupied by a person who is a member of an organization designated as subversive by the Attorney General * * *." 66 Stat. 403 (1952), 67 Stat. 307 (1953), 42 U.S.C.A. § 1411c.

mination that the "best interests" of the child would be served by denial of the adoption. The courts may not regard such refusal as an adverse reflection upon character.

■ Nor can denial of the adoption rest on a distinction between the "social status" of whites and Negroes. There may be reasons why a difference in race, or religion, may have relevance in adoption proceedings. But that factor alone cannot be decisive in determining the child's welfare.[6] It does not permit a court to ignore all other relevant considerations. Here we think those other considerations have controlling weight.

The child is living in the happy home of its natural mother and stepfather, receiving the same loving care they give to the two children born of their marriage. That it is in the best interests of the child to live in that home with the natural mother is obvious. It is equally plain that the child will continue to live there no matter what disposition is made of this case. Hence denial of adoption could only serve the harsh and unjust end of depriving the child of a legitimatized status in that home.[7]

Reversed and remanded to the District Court with directions to grant the petition for adoption.

6. Unlike some other statutes, the District of Columbia law does not prohibit interracial adoptions. See Comment, Moppets on the Market: The Problem of Unregulated Adoptions, 59 Yale L.J. 715, 722 n. 36 (1950). It merely requires a statement of the race of petitioner and the adoptee or his natural parents. D.C. Code, § 16–214 (Supp.1954), formerly § 16–201 (1951). Even under a statute, G.L.Mass.(Ter.Ed.) c. 210, § 5B, added by St.1950, c. 737, § 3, directing that a court " 'when practicable must give custody only to persons of the same religious faith as that of the child' ", it has been held that "identity of religion should [not] be the sole or necessarily the principal consideration." Petition of Gally, 1952, 329 Mass. 143, 148, 107 N.E.2d 21, 24, 25. Cf. Petition of Goldman, 1954, 331 Mass. 647, 121 N.E.2d 843, certiorari denied 1955, 348 U.S. 942, 75 S.Ct. 363.

7. No guardian ad litem was appointed to represent the interests of the adoptee. D.Ct. Rule 50(c). See Barnes v. Paanakker, 1940, 72 App.D.C. 39, 43–44, 111 F.2d 193, 197–198. While such representation is not mandatory in every case, In re Adoption of a Minor, 1941, 74 App.D.C. 50, 51, 120 F.2d 720, 721, it may be advisable procedure, where, as in this case, there are no adverse parties and, despite the favorable recommendation of the Board of Public Welfare, the District Court is disposed to deny the petition for adoption. Since we conclude here that all the evidence relevant to the "best interests" of the child firmly points in the direction of adoption, we see no reason to remand now for the "mere formalism" of appointing a guardian. Ibid.