**E. Leslie HAMM et al., Plaintiffs,**

v.

**VIRGINIA STATE BOARD OF ELECTIONS et al., Defendants.**

**Civ. A. No. 3127.**

United States District Court
E. D. Virginia,
Alexandria Division.

Argued Feb. 21, 1964.

Decided April 28, 1964.

Allison W. Brown, Jr., Washington, D. C., and Otto L. Tucker, Alexandria, Va., for plaintiffs.

Robert Y. Button, Atty. Gen., R. D. McIlwaine, III, Asst. Atty. Gen., William J. Hassan, Commonwealth's Atty., Arlington, Va., Ralph G. Louk, Commonwealth's Atty., Fairfax, Va., Earl F. Wagner, Commonwealth's Atty., Alexandria, Va., for defendants.

Before ALBERT V. BRYAN, Circuit Judge, and LEWIS and BUTZNER, District Judges.

ALBERT V. BRYAN, Circuit Judge.

Certain Virginia statutes and a section of her constitution are here attacked by plaintiff Negro and white citizens of the State as violative of the Fourteenth and Fifteenth amendments of the Federal constitution. The laws assailed deal with records relating to: (1) voting, (2) property tax assessments, and (3) divorce. Plaintiffs allege that provisions in the first category "require lists of persons who are qualified voters in Virginia to be maintained on a racially segregated basis."[1] The second category is averred to "provide for the maintenance on a racially segregated basis of public records pertaining to property ownership and taxation".[2] The divorce statute in suit directs that every decree of divorce must recite the race of the spouses.[3] Besides asking for a declaration of the invalidity of these statutory and constitutional provisions, plaintiffs also "seek an injunction restraining the various governmental officials named as defendants from enforcing, executing or administering their provisions."

The "separate but equal" racial doctrine was condemned a decade ago in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Subsequent decisional law has made it axiomatic that no State can directly dictate or casually promote a distinction in the treatment of persons solely on the basis of their color. To be within the condemnation, the governmental action need not effectuate segregation of facilities directly. Cf. Anderson v. Martin, 375 U.S. 399, 402, 84 S.Ct. 454, 11 L.Ed. 430 (1964). The result of the statute or policy must not tend to separate individuals by reason of difference in race or color. No form of State discrimination, no matter how subtle, is permissible un-

1. Specifically, the following portions of Virginia's voting records laws are questioned as unconstitutional:

(a) Article II, § 38 of the Virginia Constitution—requiring lists of those who have paid their poll taxes to state "white and colored persons separately."

(b) Section 24-28 Code of Virginia—requiring registration lists of "white and colored" voters to be "kept and arranged in separate books or records."

(c) Section 24-118 Code of Virginia—requiring registration lists of voters in certain counties and cities to be kept in loose leaf binders "with white sheets for recording the names of white voters and buff sheets for recording the names of colored voters."

(d) Section 24-120 Code of Virginia as amended in 1963—requiring lists of those who have paid their poll taxes and filed certificates of residence to state "white and colored persons" and certain tribal Indians separately.

2. That part of the property ownership and taxation statutes criticized are:

(a) Section 58-790, Code of Virginia, requiring assessors, at the time of making assessments of real estate to "note whether the owner is white or colored, or Indian as defined by § 1-14 of the Code."

(b) Section 58-804, pars. (b, c, d and h), Code of Virginia, requiring land books for the cities and counties to be arranged so that separate listings are made of real estate owned by "white persons," "colored persons" and certain "tribal Indians."

(c) Section 58-880, Code of Virginia, requiring personal property books to be arranged so that personal property assessments with taxes and levies are shown separately for "white persons" and "colored persons."

3. Section 20-101, Code of Virginia, requires "[a]ny interlocutory or final decree granting a divorce a mensa et thoro or a vinculo matrimonii * * * [to] contain a recital showing the race of the husband and wife * * *."

der the guarantees of the Fourteenth amendment freedoms. See, e. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 721–26, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); National Ass'n for Advancement of Colored People v. State of Alabama, ex rel. Patterson, 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ Although the legislative history of the provisions presently under examination cannot adequately be traced, it is evident from the language employed that, save for the divorce decree statute, they serve no other purpose than to classify and distinguish official records on the basis of race or color. Separation of white and colored on the poll tax, residence-certificate and registration lists as well as on the assessment rolls renders these provisions invalid under the equal protection clause of the Fourteenth amendment.

■ Of course, the designation of race, just as sex or religious denomination, may in certain records serve a useful purpose, and the procurement and compilation of such information by State authorities cannot be outlawed per se. For example, the securing and chronicling of racial data for identification or statistical use violates no constitutional privilege. If the purpose is legitimate, the reason justifiable, then no infringement results. The infirmity of the provisions just mentioned lies in their mandate of *separation* of names by race.

■ Vital statistics, obviously, are aided by denotation in the divorce decrees of the race of the parties. This provision of section 20–101 of the Virginia Code is not objectionable in law. Of course, the advertence must be made in every case, not just in suits involving Negroes.

For the reasons outlined, the defendant State and local officers will be restrained from further administration and enforcement of the Virginia laws in issue insofar as they are inconsistent with the views herein expressed. Since no voting rights and tax assessments are impaired by the present practice, and so there is no urgency for earlier changes, compliance with the restraint we now impose will not be required before December 31, 1964.