**In re the Adoption of Margarita GOMEZ and Maria Del Refugio Gomez, minors.**

**No. 5904.**

Court of Civil Appeals of Texas.

El Paso.

Nov. 1, 1967.

Peticolas, Luscombe & Stephens and Mark Howell, El Paso, for petitioner.

# OPINION

PER CURIAM.

Walter Strawn, Jr., filed his verified petition in the District Court of El Paso County, Texas, for leave to adopt the minor girls, Margarita Gomez and Maria del Refugio Gomez. Petitioner alleged that he is a SSG–E 6 in the United States Army living in El Paso, Texas and the minor Margarita Gomez was born in Juarez, Chihuahua, Mexico, on October 17, 1951, and Maria del Refugio Gomez was born in Juarez, Chihuahua, Mexico, on July 4, 1957, both members of the white race, as is their mother. That he married their mother on October 13, 1958 and the two children have lived in the home of petitioner since said date. Since the children were not born in lawful wedlock, the written consent of the mother was obtained and both children appeared in person before the court and requested that the court grant the adoption, and Margarita Gomez, being over 14 years of age, gave her written consent to the adoption.

The court made findings of fact and conclusions of law, and further recited in the judgment that all investigations, written reports and notice to the Executive Director of the State Department of Public Welfare at Austin, Texas—in fact, all requirements of the Texas Adoption Statutes—had been given full compliance to the satisfaction of the court. But the court also found and recited that the girls, subjects of adoption, were members of the white race and the petitioner was a member of the negro race and, although the minor girls are proper subjects for adoption and the home of petitioner is a suitable home for said minor girls and such home and children are suited to each other, that such adoption is prohibited by Section 8 of Article 46a of the Vernon's Ann.Revised Civil Statutes of Texas prohibiting the adoption of a white person by a negro person, and thus denied the petition for adoption. The judgment further recites that this prohibition was the sole reason for denying the petition, and but for such prohibition the petition for leave to adopt the children would have been granted; from which judgment denying the petition this appeal is taken.

The sole point of error reads:

## "FIRST POINT

"The District Court erred in not granting Petitioner leave to adopt for the reason that Section 8, Article 46a, Revised Civil Statutes of Texas is unconstitutional as violating the Equal Protection Clause of the United States Constitution. (Section 1, 14th Amendment to the United States Constitution)."

Section 8, Article 46a, T.R.C.S., reads as follows:

"No white child can be adopted by a negro person, nor can a negro child be adopted by a white person."

Under the Texas Miscegenation Statute, Article 493, Vernon's Ann. Texas Penal Code, defines "negro" and "white person" as follows:

"The term 'negro' includes also a person of mixed blood descended from negro ancestry from the third generation inclusive, though one ancestor of each generation may have been a white person. Any person not included in the foregoing definition is deemed a white person within the meaning of this law."

Section 1 of Amendment XIV of the United States Constitution provides:

" * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Petitioner admits that the exact question presented in his sole point of error has never been passed upon by either a State

or a Federal court. However, he cites the annotation, "Race as a factor in adoption proceedings" to be found in 54 A.L.R.2d 909, and states:

"In no case treated in the annotation is the question raised inquiring whether a racial ban on adoption is unconstitutional. All of the cases treated in the annotation discuss to what extent the trial judge can consider racial differences in granting or denying the adoption. In reversing a denial of an adoption of an illegitimate white child by its colored stepfather, the court in Re Adoption of a Minor (1955) 97 App. D.C. 99, 228 F.2d 446, 54 A.L.R.2d 905, stated that while a difference in race may have relevance in an adoption proceeding that factor alone cannot be decisive in determining what is best for the welfare of the child, and that in this case it was to the child's best interests to continue to occupy the home of its natural mother and colored stepfather and their children, which the child would do regardless of the decree in the adoption case, and that a denial of the adoption simply had the result of denying the child a legitimized status in the home in which it lived."

The case referred to in the annotation, 54 A.L.R.2d 905, is summarized as follows:

"Adoption of a child was sought by the instant petition of its natural mother and stepfather. It appeared that the child and mother were of the white race, and that the stepfather was of the colored race, and that the mother and stepfather had refused to sign a loyalty declaration required of tenants in a federal housing project.

"On an appeal by the petitioners, a decree of the United States District Court, District of Columbia, denying the petition, was reversed, and the case remanded with directions to grant the petition, by the United States Court of Appeals, District of Columbia Circuit, which, in an opinion by Bazelon, Circuit Judge, held that the above-mentioned factors were not decisive and that a consideration of all the circumstances in the case relative to the best interests of the child pointed in the direction of adoption."

However, it is further noted that the District of Columbia law does not prohibit interracial adoptions.

Petitioner then cites us to the various instances during the past decade wherein racial discrimination has been declared violative of the United States Constitution, stating:

" * * * In the fields of transportation, education, voting, labor and employment, regulation of business or occupation, recreational facilities, eating facilities, hospital facilities, and jury selection State racial discrimination has been struck down by the United States Supreme Court as violating the equal protection clause."

We are cited to: "Annotations: Race discriminations—Supreme Court Cases, 15 Law.Ed.2d 990, Supplementing 94 Law.Ed. 1121, 96 Law.Ed. 1291, 98 Law.Ed. 882; 100 Law.Ed. 488, 3 Law.Ed.2d 1556; 6 Law.Ed.2d 1302, 2 Law.Ed.2d 1105; 'Race Discrimination in the selection of a Grand or Petit Jury', 94 Law.Ed. 856, 2 Law.Ed.2d 2040."

In the case of Hamm v. Virginia State Board of Elections, 230 F.Supp. 156, 157 (U.S.D.C., E.D. Virginia, 1964) the court, in its opinion recites:

"The 'separate but equal' racial doctrine was condemned a decade ago in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Subsequent decisional law has made it axiomatic that no State can directly dictate or casually promote a distinction in the treatment of persons solely on the basis of their color. To be within the condemnation, the governmental action need not effectuate segregation of facil-

ities directly. Cf. Anderson v. Martin, 375 U.S. 399, 402, 84 S.Ct. 454, 11 L. Ed. 430 (1964). The result of the statute or policy must not tend to separate individuals by reason of difference in race or color. No form of State discrimination, no matter how subtle, is permissible under the guarantees of the Fourteenth amendment freedoms. See, e. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 721–726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); National Ass'n for Advancement of Colored People v. State of Alabama, ex rel. Patterson, 357 U.S. 449, 463, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)."

Petitioner further asserts that Section 8 of Article 46a, T.R.C.S., of the Texas adoption statutes is also violative of Section 3 of Article I of the Texas Constitution, Vernon's Ann.St. which reads:

"Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

about which it is stated in the "Interpretive Commentary", under Article I, Section 3:

" * * * Section 3 of Article I sets forth two meanings of equality, that of equal protection of the laws, and that of political equality."

In addition to Federal cases already referred to, petitioner cites the very recent U.S. Supreme Court case of Loving v. Com. of Virginia, 388 U.S. 1, 18 L.Ed.2d 1010, 87 S.Ct. 1817 (June 12, 1967), in which Chief Justice Warren states:

" * * * Over the years, this Court has consistently repudiated '[d]istinctions between citizens solely because of their ancestry' as being 'odious to a free people whose institutions are founded upon the doctrine of equality.' Hirabayashi v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 1385, 87 L.Ed. 1774, 1785, (1943). At the very least, the Equal Protection Clause demands that racial classifications, especially suspect in criminal statutes, be subjected to the 'most rigid scrutiny,' Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194, 198, (1944), and, if they are ever to be upheld, they must be shown to be necessary to the accomplishment of some permissible state objective, independent of the racial discrimination which it was the object of the Fourteenth Amendment to eliminate."

Leaving the purely legal aspects of this matter momentarily, as pointed out to us by Petitioner there are certain considerations aside from the legal aspects which are perhaps worth mentioning, to-wit, the adoption of the minors by petitioner would legitimize the children and would enable them to receive benefits as dependents of a member of the Armed Forces under Army Regulations 37–104, 30421 d(9) (a) and c(2) (c).

Under the record as presented in the case before us, and the language of the cases and authorities heretofore quoted, we are impelled to the inevitable conclusion that the provision of Section 8, Article 46a of the Texas Revised Civil Statutes is unconstitutional as violative of Section 3 of Article I of the Texas Constitution, as well as Section 1 of Amendment XIV of the United States Constitution. We must, therefore, sustain the petitioner's point of error and reverse the decision of the trial court refusing the application for adoption herein, and render judgment granting the petition for adoption.