**Guillermo COMPOS et al., Plaintiffs,**

v.

**John J. McKEITHEN, Governor of Louisiana, et al., Defendants.**

**Civ. A. No. 71-691.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 24, 1972.

Debra Ann Millenson, New Orleans, La., for plaintiffs.

John E. Jackson, Jr., William P. Curry, Jr., New Orleans, La., for State defendants.

Max M. Schaumburger, Dudley Yoedicke, New Orleans, La., for Methodist Home Hospital, Inc.

Philip E. James, New Orleans, La., for Rt. Rev. Iveson B. Noland.

Wilson F. Shoughrue, Jr., New Orleans, La., for E. Bostwick and Episcopal Community Service.

Before WISDOM, Circuit Judge, and MITCHELL and CASSIBRY, District Judges.

CASSIBRY, District Judge.

This Three-Judge District Court was convened to consider the validity of Louisiana Revised Statutes, Title 9, Section 422, which precludes interracial adoption in Louisiana. The pertinent part of that statute provides:

"A single person over the age of twenty-one years, or a married couple jointly, may petition to adopt any child of his or their race. * * *" (LSA–R.S. 9:422) [1]

1. Louisiana appears to be the only state which has a statute limiting adoption to persons of the same race. A Texas statute which expressly prohibited interracial adoption was declared invalid by the Court of Civil Appeals of Texas in 1967. In re

In this class action the plaintiffs seek declaratory and injunctive relief on the basis of the statute's repugnance to the Fourteenth Amendment of the United States Constitution. The Court has jurisdiction under 28 U.S.C. §§ 1343(3) and (4), and a three-judge court is required by 28 U.S.C. § 2284.

Plaintiffs Guillermo and Carolie Compos, both Caucasians over the age of 21, inquired in June 1970 of the defendant Episcopal Community Services,[2] an adoption agency licensed by the State of Louisiana, regarding the possibility of adopting a Negro child. The agency advised Mr. and Mrs. Compos by letter dated October 27, 1970 that they did not then have a Negro of suitable age available for adoption, and, in any event, the agency could not consider the request because of the provision of Louisiana's adoption statute preventing the adoption of a child of a race different from that of the adoptive parents. Other inquiries made by the Compos about the possibilities of adopting a Negro child have been refused also on the basis of LRA–R.S. 9:422.

Plaintiff Edmond Norman, a Negro, and his wife Gerda, a Caucasian, both over the age of 21, applied in February 1970 to the Methodist Home Hospital, Inc., an adoption agency licensed by the State of Louisiana, seeking to adopt a child. The Normans were informed by letter in April 1970 that, because they were of different races, they were ineligible as potential adoptive parents under LSA–R.S. 9:422 and the agency refused to consider their application further. Other good faith inquiries about adopting a child in Louisiana have been similarly refused.

The actions of Episcopal Community Services and of the Methodist Home Hospital, Inc., in refusing the requests for adoption reflect solely the provision of the state law and were not the product of any investigation into the requesting couples' home life or their fitness as adoptive parents. Under the present state law each agency, charged with upholding the state's adoption law, would consider itself bound to take the same action if a similar request were received by it.

The plaintiffs contend that the Louisiana adoption statute exceeds the legislative authority of the state under the police power as "limited by the inhibitions of the Fourteenth Amendment", citing Southern Railway v. Virginia ex rel. Shirley, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260 (1933); Nashville, Chattanooga and St. Louis Railway Co. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935); Dobbins v. Los Angeles, 195 U. S. 223, 25 S.Ct. 18, 49 L.Ed. 169 (1904). Their principal argument against the statute as exceeding the police power is that it creates racial distinctions without reasonable basis and thus results in arbitrary, invidious racial discrimination violative of the Equal Protection Clause of the Fourteenth Amendment as did the Florida statute making it a crime for unmarried interracial couples to cohabit [McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964)], and the Virginia anti-miscegenation statutes [Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)].

The defendants[3] recognize that the Supreme Court of the United States has subordinated a state's police power to

Adoption of Gomez, 424 S.W.2d 656. Former Revised Civil Statutes of Texas, Section 8, Article 46a read:
"No white child can be adopted by a negro person, nor can a negro child be adopted by a white person."
No federal court has previously considered the validity of a statute forbidding interracial adoption.

2. Defendant The Rt. Rev. Iveson B. Noland is the supervisor of this agency, and

defendant Edith H. Bostwick is its executive director.

3. Besides the Governor and the adoption agencies, the plaintiffs have named as defendants the State Board of Public Welfare and its Chairman and members. The Board is responsible for the formulation of all policies, rules and regulations of the Louisiana Department of Public Welfare including those relating to adoption.

the Equal Protection Clause, but they contend this was done only to protect a basic civil right. They argue that the right of adoption is not even a natural right, but exists only when created by statute, and we should therefore defer to the wisdom of the Louisiana legislature and make no constitutional inquiry into the State's determination that it would not. be in the child's best interest to be adopted by parents of a different race.

The defendants argue, furthermore, that the racial distinction is reasonable in the adoption statute. They point out that the adoption agency and the Department of Public Welfare have a duty to the child to see that he is placed in a home where he can develop normally, and urge that a rational foundation exists therefore for the requirement that petitions for adoption be limited to a child of the petitioner's race. The rational basis suggested is that it is not normal or natural for white parents to beget a black child or for black parents to beget a white child, and the legislative determination that it is for the best interests of the child that he have parents of his own race cannot be regarded therefore as invidious, arbitrary racial discrimination.

■■ The Supreme Court has indicated that some statutes should be examined more closely than others for equal protection violation because of racial classification. Where racial classifications are embodied in a criminal statute, courts must be "especially sensitive to the policies of the Equal Protection Clause," McLaughlin v. Florida, *supra*; racial classifications are "especially suspect in criminal statutes", Loving v. Virginia, *supra*, and the Equal Protection Clause demands that they be subjected to the "most rigid scrutiny." Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944). The Court has never deferred to the wisdom of state legislatures in cases involving racial discrimination, however, as they have in cases involving discrimination other than race. See Railway Express Agency, Inc. v. People of State of New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). Any statute containing racial classifications is "constitutionally suspect", Bolling v. Sharpe, 347 U.S. 497, 499, 74 S. Ct. 693, 694, 98 L.Ed. 884, see McLaughlin v. Florida, *supra*, Loving v. Virginia, *supra*, and justification for the racial classifications must be found, that is, it must be found that the racial classifications are necessary to the accomplishment of some permissible state objective and that the classifications are reasonable in light of their purpose, otherwise they can be regarded only as arbitrary, invidious discrimination.

■ Cognizant of the realities of American society, this Court would agree that an interracial home in Louisiana presents difficulties for a child, including the possible refusal by a community to accept the child, and other community pressures, born of racial prejudice, on the interracial family. A determination of reasonableness of racial classification in this statute would seem to follow recognition of such difficulties, but we regard the difficulties inherent in interracial adoption as justifying consideration of race as a relevant factor in adoption, and not as justifying race as the determinative factor.

To justify the racial classification in Louisiana's adoption statute, the defendants must convince the Court that under all circumstances it is against the child's best interests to have racially different parents or a racially different parent. The defendants argue only that it cannot be regarded as unreasonable to require that a child have a "natural" family, that is, racially matched parents. They do not urge, nor could they successfully do so, that given the alternatives of institutional life, foster home care or an interracial family home, the institutional life or foster home care would prevail in all instances over the interracial family in serving the best interests of the child.

When the advantages of family life in promoting personality development and social adjustment are considered, the disadvantages of an interracial adoption cannot be said to outweigh in all cases the advantages of a home and family life to a child whose only alternatives are institutional life or foster home care. It is obvious, therefore, that the Louisiana statute making race the decisive factor in adoption subordinates the child's best interests in some circumstances to racial discrimination. The statute thus promotes not the child's best interests but only the integrity of race in the adoptive family relationship.

In all jurisdictions the welfare and best interests of the child are paramount in both adoption and custody proceedings. In some of these the courts have concluded that avoidance of an interracial family, and making race the determinative factor in adoption and custody proceedings do not necessarily serve the best interests of the child. Although the courts were not considering constitutional issues, the decisions are relevant to the defendants' contention in this case that the Louisiana adoption statute making race the determinative factor promotes the best interests of the child and is thus justifiable as reasonable racial classification for that purpose.

In re Adoption of a Minor, 97 U.S. App.D.C. 99, 228 F.2d 446 (1955), involved the rejection by the District Court of a petition by the Negro stepfather for the adoption of a white illegitimate child because of the difficult social problem the white child of a Negro father would face. The Court of Appeals concluded that the denial of the adoption on the basis of race did not serve the best interests of the child under the circumstances of this case. The Court said:

"* * * There may be reasons why a difference in race * * * may have relevance in adoption proceedings. But that factor alone cannot be decisive in determining the child's welfare. It does not permit a court to ignore all other relevant considerations. Here we think those other considerations have controlling weight." [4]

In Matter of the Adoption of Baker, 117 Ohio App. 26, 185 N.E.2d 51 (1962), a petition by a Caucasian and his Japanese wife to adopt the illegitimate child of a mother of English descent and a Puerto Rican father was denied because in the Probate Court's opinion the best interests of the child would not be promoted by such adoption. The child had been placed with a social agency soon after birth and difficulty had been encountered in finding a foster home for her because of her mixed nationality. After being placed in the petitioners' home she had developed well and was a well and happy child. The Court of Appeals of Ohio disagreed with the Probate Court's determination of the child's best interests under the circumstances.

"Under ordinary circumstances a child should be placed in a family having the same racial, religious and cultural backgrounds, but such a placement is not precluded. In considering the best interests of the subject child, it should not be overlooked that we are dealing here with an unwanted waif whose father is unknown and whose mother is unable to provide a home with the love and affection which might be accorded an illegitimate child. Prior to placing the child with the petitioners, five other couples

---

4. The court evaluated the circumstances thus:
   "The child is living in the happy home of its natural mother and stepfather, receiving the same loving care they give to the two children born of their marriage. That it is in the best interests of the child to live in that home with the natural mother is obvious. It is equally plain that the child will continue to live there no matter what disposition is made of this case. Hence denial of adoption could only serve the harsh and unjust end of depriving the child of a legitimatized status in that home." In re Adoption of a Minor, *supra*, at p. 448.

seeking children declined to receive the child in their homes. As we view it, the only alternative, if the judgment be affirmed, is to have the child remain an illegitimate orphan to be reared in an institution. Orphanages are all well and good but they do not provide a real home with the attendant care, love and affection incident to the relation of parent and child. With all due respect for the learned trial judge's conclusion, we differ therewith and are constrained to hold upon the record presented that the best interests of the child will be promoted by granting the petition for adoption. We, therefore, conclude that the order denying adoption is unreasonable, unsupported by substantial evidence, and consequently contrary to law."

In the custody proceeding in Fountaine v. Fountaine, 9 Ill.App.2d 482, 133 N.E.2d 532 (1956), the circuit court allowed a Negro father to retain custody of his children against the demand of their white mother from whom he was divorced and who had remarried a Caucasian. Since the children resembled their father and looked like colored children, the trial court considered that it was to their best interests to remain with their Negro father. Race as a decisive factor was rejected on appeal, and the trial court's determination was reversed:

"* * * In passing upon the question of how the interests and welfare of the children will be best served, the court can and should take into consideration all relevant considerations which might properly bear upon the problem. However, we do not believe that the question of race alone can overweigh all other considerations and be decisive of the question. * * *"

We have concluded that the Louisiana adoption statute cannot be justified under equal protection scrutiny. The necessity for racial matching of parent, or parents, and child in adoption to promote the best interests of the child, and the reasonableness of that racial classification in light of that purpose cannot be sustained. The plaintiffs are entitled to the declaratory and injunctive relief sought.

For the reasons expressed in the foregoing opinion, it is ordered, adjudged and decreed by the Court that Louisiana Revised Statutes, Title 9, Section 422, insofar as it limits a petition for adoption by a single person over the age of twenty-one years, or a married couple jointly, to a child of his or their race, is hereby declared to be unconstitutional, and its enforcement against plaintiffs and all others is permanently enjoined.