UNITED STATES of America, Plaintiff,

v.

The STATE OF ALABAMA; George C. Wallace, Governor of the State of Alabama; The Alabama State Board of Education; Wayne Teague, State Superintendent of Education; The Board of Trustees for Alabama A & M University, a public corporation; The Board of Trustees for Alabama State University, a public corporation; Auburn University, a public corporation; Jacksonville State University, a public corporation; Livingston University, a public corporation; Troy State University, a public corporation; The University of Montevallo, a public corporation; The Board of Trustees for the University of Alabama, a public corporation; The University of South Alabama, a public corporation; The Alabama Commission on Higher Education; and The Alabama Public School and College Authority, Defendants.

Civ. A. No. 83–C–1676–S.

United States District Court,
N.D. Alabama, S.D.

Sept. 26, 1983.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff.

John Richard Carrigan, Edward S. Allen, Balch, Bingham, Baker, Ward, Smith, Bowman & Thagard, Birmingham, Ala., Thomas W. Thagard, Jr., Montgomery, Ala., Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., Thomas H. Keeling, Harvey L. Handley, III, Jay P. Heubert, General Litigation Section Civil Rights Div., Dept. of Justice, Washington, D.C., Ira De Ment, Ronald W. Wise, De Ment & Wise, Montgomery, Ala., Walter J. Merrill, Anniston, Ala., Joe R. Whatley, Jr., Donald W. Stewart, Stewart, Falkenberry & Whatley, Birmingham, Ala., Charles S. Coody, State Dept. of Educ., Montgomery, Ala., Thomas D. Samford, III, Samford & Samford, Opelika, Ala., Robert L. Potts, Potts, Young, Blasingame & Suttle, Florence, Ala., Maxey J. Roberts, University of South Alabama, Mobile, Ala., Richard F. Calhoun, Brantley & Calhoun, Troy, Ala., J. Fredric Ingram, William F. Murray, Jr., Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., C. Glenn Powell, University, Ala., Demetrius C. Newton, Birmingham, Ala., Thomas N. Todd, Chicago, Ill., J. Richmond Pearson, Birmingham, Ala., Donald V. Watkins, Watkins, Carter & Knight, Montgomery, Ala., James U. Blacksher, Larry T. Menefee, Blacksher, Menefee & Stein, Mobile, Ala., for defendants.

## MEMORANDUM OF OPINION OVERRULING MOTION TO DISQUALIFY UNDER 28 U.S.C. § 455

CLEMON, District Judge.

I have earlier determined that the recusal motions of Auburn University and State

Superintendent of Education Wayne Teague are legally insufficient, as a matter of law, under § 144 of the Judicial Code 571 F.Supp. 958. It is now my conclusion that under § 455 of the Judicial Code, the motions are either factually inaccurate or legally irrelevant; and that a reasonable person, viewing the true facts, would not harbor doubts concerning my impartiality in this proceeding. Therefore, the recusal motions shall be denied in their entirety.

■ Since the intervention petition of Oscar and R. Franklin Williams has now been withdrawn, there is absolutely no basis for a claim that my minor children are or may be parties to this litigation, if indeed such basis ever existed.[1]

■ The claim that I am biased or prejudiced in this proceeding because one of the parties is represented by the law firm of former United States Senator Donald Stewart is devoid of legal merit.[2] The law is clear: in passing on recusal motions alleging bias or prejudice, *a court "... should determine the disqualification* on the bases of conduct which shows bias or prejudice or the lack of impartiality *by focusing on a party rather than counsel." Davis v. Bd of School Com'rs*, 517 F.2d 1044, 1052. There is no room for the suggestion that Donald Stewart is in effect a party, in that his law firm has a stake in attorney's fees which may be awarded to the prevailing parties in this proceeding; for the uncontradicted evidence is that his law firm is being retained and paid on an

hourly basis and his fee does not depend, in any way, on his winning or losing this case.

Movants do not allege the existence of any on-going business, social, political or professional relationship between Donald Stewart and me; and there is and has been no such relationship. Cf. *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1110, 1111 (5th Cir.1980).

While employed as a parttime librarian at the NAACP Legal Defense Fund during my third year of law school, I did not acquire any knowledge, personal or otherwise, of any of the facts, disputed or conceded, involved in the *Lee v. Macon County* litigation.

In my view, the most troublesome aspect of the recusal affidavits arises out of the allegations concerning the *Lee v. Macon County* litigation. What makes it troublesome is not the true facts, for they exist as a matter of record. Rather, it is the lack of any reasonable or arguable basis for certain sworn statements of two members of the bar of this Court that causes grave and abiding concern.

First, the lawyers swore that *Lee v. Macon County* "... included claims under Title VI of the Civil Rights Act of 1964 against institutions of higher learning in the State of Alabama administered by the Alabama State Board of Education."[3] The sworn statement is simply untrue.

I have requested Federal Records Center in Atlanta to send to this Court the complete file in *Lee v. Macon County*, and I

---

1. The Williams Motion to Intervene was unaccompanied "by a pleading setting forth the claim ... for which intervention is sought," as required by Fed.R.Civ.P. 24(c). Insofar as it sought intervention as a class action, it failed to define a class; it did not allege compliance with the typicality and adequacy of representation standards of Fed.R.C.P. 23(a); there was no allegation of compliance with either of the requirements of Fed.R.Civ.P. 23(b). See *City of Safe Harbor v. Burchfield*, 529 F.2d 1251, 1253, n. 3 (5th Cir.1976).

Aside from the facial defects of the Williams intervention motion, these putative intervenors, had they persisted in their motion, would have faced the formidable hurdle of showing either that their interests are not represented by existing parties to the litigation or that their pro-

posed intervention would not unduly delay the adjudication of the rights of the original parties to the litigation.

Neither my sixteen-year old son nor my nine-year old daughter has indicated to me any interest in attending either of the colleges or universities involved in this action.

2. The only relevant facts alleged by the movants is that prior to my appointment, I contributed to Donald Stewart's re-election campaign; and that Donald Stewart recommended my appointment to the bench.

3. Title VI is, of course, the exclusive statutory basis of the claims involved in the instant action.

have reviewed the original complaint as well as the amended and supplemental complaints of the individual plaintiffs and the United States. The pleadings do not reflect any claims under Title VI.

In expressly disavowing any intent to rest its seminal 1967 decision on Title VI,[4] the three-judge court in *Lee v. Macon County* emphasized that *"... in this case we deal solely with constitutional requirements on the part of public officials not to discriminate on the basis of race in the operation of public schools...." Lee v. Macon County Board of Education,* 267 F.Supp. 467, n. 15 (M.D.Ala.1967). (Emphasis original).

The Title VI question is key to a determination of whether *"... in private practice,* [I] served as a lawyer in the matter in controversy." 28 U.S.C. § 455(b)(2). The reported decision makes it certain that a Title VI claim was not a "matter in controversy" in *Lee v. Macon County.*

Counsel's sworn statement that Title VI was the basis of one of the claims in *Lee* is particularly bothersome because his very own partner, co-counsel in this case, represented the State Board of Education at the time when *Lee v. Macon County* was being actively litigated before the three-judge court.

Second, counsel for the movants have sworn that *"[a]t all times since May 30, 1972, ... proceedings involving institutions of higher learning ... are not closed; but have vitality ..."* (emphasis added). Based on my review of the separately maintained files for the institutions of higher learning involved in *Lee v. Macon County,* and the affidavit of the Clerk of the United States District Court for the Northern District of Alabama, the sworn

statement is both misleading and inaccurate. Here again, the very lawyers who swore to the alleged vitality of the proceedings are precisely the ones who would have been involved had such proceedings been active.

I was completing my second year of law school when the three judge court rendered its decision which disposed of the constitutional issues affecting the colleges and universities involved in *Lee v. Macon County;* and the movants recognize that I had no involvement whatever in either of the three aspects[5] of *Lee v. Macon County* until some of the elementary and secondary schools were transferred to the Northern District of Alabama in 1970. Following the transfer, I represented black intervenors (in the case of Sumter County) and individuals (in the case of Anniston) in challenging the actions of *two* local school boards. In both cases, my involvement related to the adequacy *vel non* of specific plans affecting only the two respective systems, the alleged demotion of black principals in Sumter County, and the suspension of black students from Anniston High School. The legal standards for desegregation of public elementary and secondary schools are quite different from the standards for the desegregation of institutions of higher learning. *Alabama State Teachers Ass'n v. Alabama Public School and College Authority,* 289 F.Supp. 784 (M.D.Ala.1968).

In 1972, certain colleges and universities in *Lee v. Macon* were transferred to the Northern District of Alabama. At that time, only one such institution in the Northern District of Alabama, Alabama A & M University, remained under the control of the State Board of Education.[6] In transferring the college and university aspect to

---

4. To be sure, the Court at several points referred to the newly-enacted Title VI and the guidelines promulgated thereunder "for the purpose of demonstrating the extent of the control exercised by these state officials over the local school boards throughout the state." 267 F.Supp. 458, 467, n. 15.

5. The files, and to some extent the reported decisions, make it clear that there were three aspects of *Lee v. Macon County:* (1) local city

and county schools systems; (2) trade and technical schools; and (3) colleges and universities administered by the State Board of Education.

6. Boards of trustees for Florence State College (now the University of North Alabama), Livingston University, and Jacksonville State University were established by the Alabama Legislature in 1967.

the Northern District, the three-judge court stated that "... the major constitutional issues have been decided and are no longer in controversy." Order of May 29, 1972, p. 3. When the case was transferred, the impetus for the transfer (a complaint in intervention against Livingston University) was severed from the main case and treated as a new case—*Lee v. Board of Trustees of Livingston University*, CA 72–510, W.Div. Since that time, there have been absolutely no proceedings in the Northern District of Alabama involving the institutions of higher learning in *Lee v. Macon County*.[7] The cases are not shown as active cases on the current dockets of the various judges of this court.

Each of the three grounds on which Auburn University and Wayne Teague seek recusal is totally lacking factual and/or legal basis.[8] No other ground for recusal is suggested. While a reasonable person, reading the affidavits of movants and their counsel and accepting their allegations as true, would certainly harbor doubts as to my impartiality, when the true facts and circumstances are known and considered in their totality, such doubts are dispelled.

I have again carefully reviewed the facts and circumstances vis-a-vis my presiding as judge in this case, in light of the desire of two of the parties that I recuse myself. My only justification for acceding to their request would be that I handled public elementary and secondary school desegregation cases while in private practice. Those cases, and my involvement in them, did not involve the matter in controversy; they were litigated under legal standards which are different from applicable standards in this case.

I have painstakingly searched and reviewed all the relevant papers and, most importantly, my conscience, and I know of no facts which would cause a reasonable person to harbor doubts as to my impartiality in this proceeding.

Accordingly, the Motions to Disqualify will be OVERRULED, on all grounds.[9]

---

7. I have never had any involvement in this aspect of *Lee v. Macon*. Indeed, I was not even aware that some of the state colleges and universities were involved in *Lee v. Macon* until sometime within the last twelve months.

8. The words of Judge Arnow are particularly appropriate here:

> In determining the necessity for disqualification, all circumstances bearing upon it should be considered. But that does not mean that various circumstances, each insufficient standing alone, mandates sufficiency in totality. Under the factual situation here presented, holding that these various circumstances in combination require disqualification would be tantamount to holding that adding several zeroes together would produce something more than zero.

*Miller Industries v. Caterpillar Tractor Co.*, 516 F.Supp. 84 (S.D.Ala.1980).

9. I remain perplexed by the misstatements of fact contained in the sworn affidavits of counsel for Auburn University and Wayne Teague. I realize that a lawyer has a duty to represent his client, and that the filing of a § 144 affidavit may sometimes be a part of that duty. Indeed, while in private practice, I represented the parties who filed the disqualification affidavit in *Parrish v. Board of Com'rs of Alabama State Bar*, 524 F.2d 98 (5th Cir.1975). But a lawyer's duty to zealously represent his client within the bounds of the law does not transcend his concomitant sworn duty, as a lawyer and as an officer of the court, not to knowingly misrepresent facts to the court or use false evidence.

I cannot find that counsel's statements concerning Title VI and the continuing vitality of *Lee v. Macon County* were known by them to be false at the time they were made. But their obvious failure to review the file and the reported decisions in that case, and their apparent failure to consult with co-counsel (who should have had actual knowledge), suggest the kind of reckless indifference to the facts as would be the legal equivalent of constructive knowledge.

The gravity of the factual misstatements is that they were sworn to, and counsel knew that under § 144 of the Judicial Code, their truth could not be questioned.

In lieu of sanctions, perhaps this footnote will serve to remind counsel of the oath they took before being admitted to practice law.