E. E. COLLINS *Plaintiff in Error,* v. THE STATE OF
FLORIDA, *Defendant in Error.*

Opinion Filed March 27, 1922.

1. Where a woman voluntarily leaves her home or place of
residence on invitation of a man to take a walk or a ride,
and during their absence, they indulge in sexual intercourse,
the man's part in the act does not bring him within the pro-
vision of Section 5413, Revised General Statutes of 1920,
against enticing a female to come into the State or to leave
her home for immoral purposes.

2. The words used in the statute "leave her home or other
place where she may be residing," taken in connection with
the immoral acts designated in the statute, contemplate
more than a temporary absence for a walk or ride, taken
*cum animo revertendi.*

3. The words of the statute "and for other immoral purposes"
mean acts as "prostitution" "concubinage" or "to enter a
house of prostitution."

4. Section 5413, Revised General Statutes of 1920, does not
relate to or include casual acts of fornication, the punish-
ment for which is provided for in Section 5408, Revised Gen-
eral Statutes of 1920.


A Writ of Error to the Criminal Court of Record for
Dade County; Thomas B. Norfleet, Judge.

Judgment Reversed.

*Price & Price* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *Marvin C. McIn-
tosh,* Assistant, for the State.

BROWNE, C. J.—The defendant was convicted in the Criminal Court of Record of Dade County on an information containing two counts. The first charged that he "did then and there induce, entice and procure one Julia Graham to leave her home in Dade County, State of Florida, for the purpose of concubinage and for other immoral purposes," and the second that he did "induce, entice and procure one Julia Graham to leave her place of residence in Miami, Dade County, for the purpose of concubinage, fornication and for other immoral purposes."

Julia Graham was the only witness for the State. She testified that her home was in Goulds, Florida, but when she first met the defendant she was working at the City Hospital in Miami; she first met him in a jitney bus going to visit her parents in Goulds, and when she saw the defendant had bought a ticket to Goulds, she accosted him and remarked, that 'she had never seen him in Goulds.' In the course of the acquaintance that began in this way, she also told him that she was stopping at the hospital in Miami. On the next night the defendant came to the hospital and they went out for an automobile ride; she went automobile riding with him several times during the following week, and they continued to take automobile rides for several weeks.

After they had been acquainted about three weeks and taken a number of automobile rides together, they were out riding one evening and the defendant told her he would not take her home unless she gave up to him, so she consented and they indulged in sexual intercourse in the car. They continued taking automobile rides and indulging in sexual intercourse in the car for about two weeks, when she left the hospital and went to live at the Y. W. C. A., where she staid about three months. She went there of her

own volition, and was not asked or induced to go there by the defendant, and he never asked her to leave the hospital and go to any other place to live, or go to any other place to have sexual intercourse with him.

She also testified that he did not offer any inducement or promise her any reward or anything of that kind to take the automobile rides with him, nor did he say anything about it being a benefit to her, or what he would do, and that he made absolutely no promise to her when they went on these automobile rides, and that he never suggested to her to leave the hospital and live in any other place.

Shortly after this she told him that she was pregnant, and she then went to Lakeland to see her aunt, and after paying her a visit returned to Miami. Afterwards she went to Orlando. She never saw the defendant while she was in Lakeland or in Orlando, and the first time he knew anything about her being at Orlando, was when she wrote or wired him from a hotel in which she was stopping there, for money; he did not request or persuade her to leave any place where she was living, or go with him any where for the purpose of having sexual intercourse with each other.

In Orlando she went to the Orange General Hospital, where she gave birth to a child. The defendant gave her money, and told her he would help her out until she was well, and he gave her $175.00 to help her out in her expenses.

She further testified that after she became pregnant the defendant gave her a catheter to cause a miscarriage, and told her it would be best for her to use it. She told him she was not going to use it, and that was all that was said or done about it. She did not use it, and she gave birth to a child that was living at the time of the trial.

All the acts of sexual intercourse between these parties were indulged in by them while she was residing in the hospital. When she left there, she went to visit her aunt in Lakeland; to the Y. W. C. A. in Miami, and to the hospital in Orlando. In none of these places did she see the defendant, nor did they have sexual intercourse with each other after she left the hospital in Miami.

We think the testimony wholly fails to support the verdict.

Sec. 5413, Rev. Gen. Statutes, under which defendant was convicted, is as follows: "ENTICING FEMALE TO COME INTO STATE OR TO LEAVE HER HOME FOR IMMORAL PURPOSES.—Whoever shall induce, entice or procure to come into this State or to leave her home or other place where she may be residing in this State, any woman or girl for the purpose of prostitution or concubinage or for other immoral purposes, or to enter any house of prostitution in this State, shall upon conviction be imprisoned in the State penitentiary for a period of not more than five years, or be fined not exceeding one thousand dollars, or shall be both so fined or imprisoned."

It is sought to support the conviction in this case on two constructions of the statute.

(1.)   That if a woman leaves her home or place of residence on the invitation of a man to take a walk or a ride, and during an absence of a few hours they indulge in sexual intercourse, the man's part in the act brings him within the provision of the statute.

As the statute, unlike Sec. 5412, does not require the woman to be "unmarried" and "of a chaste life and conversation," the construction sought to be placed upon it by the State would subject a man to its penalties if his

guilty partner were a prostitute. Such a construction cannot be maintained.

(2.)   That the term "or for other immoral purposes" includes any immoral act.

One of the alleged immoral acts upon which testimony was allowed to go to the jury over the objection of the defendant, was giving the woman a catheter and suggesting that she use it to produce a miscarriage. This she declined to do, and that ended the matter.

It was error to admit this testimony, as the act is not such as is contemplated by the statute. Even if it were, it does not appear when he gave it to her, or that he enticed, induced or procured her to leave her home or place where she was residing for the purpose of giving her the catheter. It is difficult to discuss this contention seriously.

The expression "leave her home or other place where she may be residing" taken in connection with the immoral acts designated in the statute, contemplates something more than a temporary absence for a walk or ride, taken *cum animo revertendi.* Under such a construction, if a man invites a woman to go with him to engage in card playing for anything of value, or to drink intoxicating beverages, he would be guilty under the term "or for other immoral purpose," for the "prevailing public morality" regards these acts as highly immoral. However immoral they may be, they are not contemplated by the statute, which clearly limits the term to "immoral purposes," such as "prostitution," "concubinage" and entering a "house of prosti- tution."

The second count should have been quashed as vague, indefinate and uncertain, as it did not show whether the defendant was to be tried for acts enumerated in the stat-

ute, or for an act not included within its provisions. This count charged defendant among other things with enticing, etc., for the "purpose of fornication." There is no warrant under the statute to charge that as an offense. Sec. 5408 provides a penalty for fornication and fixes it at "imprisonment not exceeding three months, or by fine not exceeding thirty dollars," and makes both offending parties amenable to the penalty. It is clear that Sec. 5413 was enacted to reach a different and more serious class of offenses than fornication, because the penalty for that offense is limited to three months in jail, or thirty dollars fine, whereas the maximum penalty for violation of Sec. 5413 is five years in the penitentiary or a fine of one thousand dollars, or both such fine and imprisonment.

The Judgment is Reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.