## McLAUGHLIN ET AL. *v.* FLORIDA.

No. 11.   Argued October 13–14, 1964.—Decided December 7, 1964.

*William T. Coleman, Jr.,* and *Louis H. Pollak* argued the cause for appellants.   With him on the briefs were *Jack Greenberg* and *James M. Nabrit III.*

*James G. Mahorner,* Assistant Attorney General of Florida, argued the cause for appellee.   With him on the brief was *James W. Kynes,* Attorney General of Florida.

MR. JUSTICE WHITE delivered the opinion of the Court.

At issue in this case is the validity of a conviction under § 798.05 of the Florida statutes, providing that:

> "Any negro man and white woman, or any white man and negro woman, who are not married to each other, who shall habitually live in and occupy in the nighttime the same room shall each be punished by imprisonment not exceeding twelve months, or by fine not exceeding five hundred dollars."

Because the section applies only to a white person and a Negro who commit the specified acts and because no couple other than one made up of a white and a Negro is subject to conviction upon proof of the elements comprising the offense it proscribes, we hold § 798.05 invalid as a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment.

The challenged statute is a part of chapter 798 entitled "Adultery and Fornication."[1]  Section 798.01 forbids living in adultery and § 798.02 proscribes lewd cohabitation. Both sections are of general application, both require proof of intercourse to sustain a conviction, and both authorize imprisonment up to two years.[2]  Section 798.03,

---

[1] Fla. Stat. Ann. § 798.01—Living in open adultery:

"Whoever lives in an open state of adultery shall be punished by imprisonment in the state prison not exceeding two years, or in the county jail not exceeding one year, or by fine not exceeding five hundred dollars.  Where either of the parties living in an open state of adultery is married, both parties so living shall be deemed to be guilty of the offense provided for in this section."

Fla. Stat. Ann. § 798.02—Lewd and lascivious behavior:

"If any man and woman, not being married to each other, lewdly and lasciviously associate and cohabit together, or if any man or woman, married or unmarried, is guilty of open and gross lewdness and lascivious behavior, they shall be punished by imprisonment in the state prison not exceeding two years, or in the county jail not exceeding one year, or by fine not exceeding three hundred dollars."

Fla. Stat. Ann. § 798.03—Fornication:

"If any man commits fornication with a woman, each of them shall be punished by imprisonment not exceeding three months, or by fine not exceeding thirty dollars."

Fla. Stat. Ann. § 798.04—White persons and Negroes living in adultery:

"If any white person and negro, or mulatto, shall live in adultery or fornication with each other, each shall be punished by imprisonment not exceeding twelve months, or by fine not exceeding one thousand dollars."

Fla. Stat. Ann. § 798.05—Negro man and white woman or white man and Negro woman occupying same room:

"Any negro man and white woman, or any white man and negro woman, who are not married to each other, who shall habitually live in and occupy in the nighttime the same room shall each be punished by imprisonment not exceeding twelve months, or by fine not exceeding five hundred dollars."

[2] Section 798.02 proscribes two offenses: (1) open and gross lewdness and lascivious behavior by either a man or a woman; (2) lewd and lascivious association and cohabitation by a man and woman. The latter offense is identical to that proscribed by § 798.01, except

also of general application, proscribes fornication[3] and authorizes a three-month jail sentence. The fourth section of the chapter, 798.04, makes criminal a white person and a Negro's living together in adultery or fornication. A one-year prison sentence is authorized. The conduct it reaches appears to be the same as is proscribed under the first two sections of the chapter.[4] Section 798.05, the section at issue in this case, applies only to a white person and a Negro who habitually occupy the same room at nighttime. This offense, however, is distinguishable from the other sections of the chapter in that it is the only one which does not require proof of intercourse along with the other elements of the crime.[5]

---

that § 798.01 contains the additional requirement that one of the participants be married to a third party. Conviction under either section requires a showing that the parties lived together and maintained sexual relations over a period of time as in the conjugal relation between husband and wife. *Braswell* v. *State*, 88 Fla. 183, 101 So. 232 (1924), *Lockhart* v. *State*, 79 Fla. 824, 85 So. 153 (1920) (both cases involving what is now § 798.01); *Wildman* v. *State*, 157 Fla. 334, 25 So. 2d 808 (1946), *Penton* v. *State*, 42 Fla. 560, 28 So. 774 (1900) (cases involving, respectively, § 798.02 and what is now that statute).

[3] Unlike all the other sections of chapter 798, § 798.03 does not relate only to habitual conduct. It proscribes single and occasional acts of fornication. See *Collins* v. *State*, 83 Fla. 458, 92 So. 681 (1922).

[4] We have not found any decisions construing § 798.04. Its operative language, "live in adultery or fornication," is substantially identical to the phrase "lives in an open state of adultery" in § 798.01, which has been construed to mean habitual conduct. That language sharply contrasts with the phrase "commits fornication" in § 798.03, which proscribes casual acts of fornication. Textual analysis therefore leads us to conclude that the Florida courts would give § 798.04 a similar construction to that accorded §§ 798.01 and 798.02. This conclusion that § 798.04 is duplicative of other provisions is consistent with the apparent lack of prosecutions under § 798.04.

[5] *Parramore* v. *State*, 81 Fla. 621, 88 So. 472 (1921). Compare note 2, *supra*.

Appellants were charged with a violation of § 798.05. The elements of the offense as described by the trial judge are the (1) habitual occupation of a room at night, (2) by a Negro and a white person (3) who are not married. The State presented evidence going to each factor, appellants' constitutional contentions were overruled and the jury returned a verdict of guilty. Solely on the authority of *Pace v. Alabama,* 106 U. S. 583, the Florida Supreme Court affirmed and sustained the validity of § 798.05 as against appellants' claims that the section denied them equal protection of the laws guaranteed by the Fourteenth Amendment. We noted probable jurisdiction, 377 U. S. 914. We deal with the single issue of equal protection and on this basis set aside these convictions.[6]

---

[6] Appellants present two other contentions which it is unnecessary for us to consider in view of our disposition of their principal claim. First, they challenge the constitutionality of Fla. Stat. Ann. § 741.11— Marriages between white and Negro persons prohibited:

"It is unlawful for any white male person residing or being in this state to intermarry with any negro female person; and it is in like manner unlawful for any white female person residing or being in this state to intermarry with any negro male person; and every marriage formed or solemnized in contravention of the provisions of this section shall be utterly null and void . . . ."

The basis for appellants' complaint regarding this statute is that in charging the jury with respect to appellants' defense of common-law marriage the trial judge stated, without objection by appellants, that because of § 741.11 it would have been unlawful for appellants to have entered into a common-law marriage in Florida. Appellants contend that this application of the marriage statute was a denial of due process and equal protection secured by the Fourteenth Amendment.

Appellants' final claim is that their convictions violated due process either because there was no proof of appellant McLaughlin's race or because the Florida definition of "Negro" is unconstitutionally vague. Fla. Stat. Ann. § 1.01 (6) provides: "The words 'negro,' 'colored,' 'colored persons,' 'mulatto' or 'persons of color,' when applied to persons, include every person having one-eighth or more of African or negro blood." At the trial one of the arresting officers was per-

I.

It is readily apparent that § 798.05 treats the interracial couple made up of a white person and a Negro differently than it does any other couple. No couple other than a Negro and a white person can be convicted under § 798.05 and no other section proscribes the precise conduct banned by § 798.05. Florida makes no claim to the contrary in this Court. However, all whites and Negroes who engage in the forbidden conduct are covered by the section and each member of the interracial couple is subject to the same penalty.

In this situation, *Pace* v. *Alabama, supra,* is relied upon as controlling authority. In our view, however, *Pace* represents a limited view of the Equal Protection Clause which has not withstood analysis in the subsequent decisions of this Court. In that case, the Court let stand a conviction under an Alabama statute forbidding adultery or fornication between a white person and a Negro and imposing a greater penalty than allowed under another Alabama statute of general application and proscribing the same conduct whatever the race of the participants. The opinion acknowledged that the purpose of the Equal Protection Clause "was to prevent hostile and discriminating State legislation against any person or class of persons" and that equality of protection under the laws implies that any person, "whatever his race .... shall not be subjected, for the same offence, to any greater or different punishment." 106 U. S., at 584. But taking quite

mitted, over objection, to state his conclusion as to the race of each appellant based on his observation of their physical appearance. Appellants claim that the statutory definition is circular in that it provides no independent means of determining the race of a defendant's ancestors and that testimony based on appearance is impermissible because not related to any objective standard. Florida argues that under Florida appellate procedure this claim was abandoned when the appellants failed to argue it in the brief they presented to the Florida Supreme Court.

literally its own words, "for the same *offence*" (emphasis supplied), the Court pointed out that Alabama had designated as a separate offense the commission by a white person and a Negro of the identical acts forbidden by the general provisions. There was, therefore, no impermissible discrimination because the difference in punishment was "directed against the offence designated" and because in the case of each offense all who committed it, white and Negro, were treated alike.[7] Under *Pace* the Alabama law regulating the conduct of both Negroes and whites satisfied the Equal Protection Clause since it applied equally to and among the members of the class which it reached without regard to the fact that the statute did not reach other types of couples performing the identical conduct and without any necessity to justify the difference in penalty established for the two offenses. Because each of the Alabama laws applied equally to those to whom it was applicable, the

---

[7] "The defect in the argument of counsel consists in his assumption that any discrimination is made by the laws of Alabama in the punishment provided for the offence for which the plaintiff in error was indicted when committed by a person of the African race and when committed by a white person. The two sections of the code cited are entirely consistent. The one prescribes, generally, a punishment for an offence committed between persons of different sexes; the other prescribes a punishment for an offence which can only be committed where the two sexes are of different races. There is in neither section any discrimination against either race. Sect. 4184 equally includes the offence when the persons of the two sexes are both white and when they are both black. Sect. 4189 applies the same punishment to both offenders, the white and the black. Indeed, the offence against which this latter section is aimed cannot be committed without involving the persons of both races in the same punishment. Whatever discrimination is made in the punishment prescribed in the two sections is directed against the offence designated and not against the person of any particular color or race. The punishment of each offending person, whether white or black, is the same." 106 U. S., at 585.

190

different treatment accorded interracial and intraracial couples was irrelevant.[8]

This narrow view of the Equal Protection Clause was soon swept away. While acknowledging the currency of the view that "if the law deals alike with all of a certain class" it is not obnoxious to the Equal Protection Clause and that "as a general proposition, this is undeniably true," the Court in *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 155, said that it was "equally true that such classification cannot be made arbitrarily. . . ." Classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Ibid.* "[A]rbitrary selection can never be justified by calling it classification." *Id.,* at 159. This approach was confirmed in *Atchison, T. & S. F. R. Co.* v. *Matthews,* 174 U. S. 96, 104–105, and in numerous other cases.[9]  See, *e. g., American Sugar Ref. Co.* v. *Louisiana,*

[8] Had the Court been presented with a statute that, for example, prohibited any Negro male from having carnal knowledge of a white female and penalized only the Negro, such a statute would unquestionably have been held to deny equal protection even though it applied equally to all to whom it applied. See *Strauder* v. *West Virginia,* 100 U. S. 303, 306–308; *Ho Ah Kow* v. *Nunan,* 12 Fed. Cas. 252 (No. 6546) (C. C. D. Cal. 1879) (Field, J.) ("Chinese Pigtail" case). Because of the manifest inadequacy of any approach requiring only equal application to the class defined in the statute, one may conclude that in *Pace* the Court actually ruled *sub silentio* that the different treatment meted out to interracial and intraracial couples was based on a reasonable legislative purpose. If the Court did reach that conclusion it failed to articulate it or to give its reasons, and for the reasons stated *infra* we reject the contention presented here that the criminal statute presently under review is grounded in a reasonable legislative policy.

[9] The *Pace* holding itself may have undergone some modification when the Court a few years later cited it for the proposition "that a different punishment for the same offence may be inflicted under particular circumstances, provided it is dealt out to all alike who are similarly situated." *Moore* v. *Missouri,* 159 U. S. 673, 678.

179 U. S. 89, 92; *Southern R. Co.* v. *Greene,* 216 U. S. 400, 417; *F. S. Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415; *Air-Way Elec. Appliance Corp.* v. *Day,* 266 U. S. 71, 85; *Louisville Gas & Elec. Co.* v. *Coleman,* 277 U. S. 32, 37–39; *Hartford Steam Boiler Inspection & Ins. Co.* v. *Harrison,* 301 U. S. 459, 461–463; *Skinner* v. *Oklahoma ex rel. Williamson,* 316 U. S. 535, 541–543; *Kotch* v. *Pilot Comm'rs,* 330 U. S. 552, 556–557; *Hernandez* v. *Texas,* 347 U. S. 475, 478; *Griffin* v. *Illinois,* 351 U. S. 12, 17–19 (opinion of BLACK, J., announcing judgment), 21–22 (Frankfurter, J., concurring); *Morey* v. *Doud,* 354 U. S. 457, 465–466; *Central R. Co.* v. *Pennsylvania,* 370 U. S. 607, 617–618; *Douglas* v. *California,* 372 U. S. 353, 356–357.

Judicial inquiry under the Equal Protection Clause, therefore, does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose—in this case, whether there is an arbitrary or invidious discrimination between those classes covered by Florida's cohabitation law and those excluded. That question is what *Pace* ignored and what must be faced here.

Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious. See, *e. g., McGowan* v. *Maryland,* 366 U. S. 420, 425–426; *Two Guys from Harrison-Allentown, Inc.* v. *McGinley,* 366 U. S. 582, 591–592; *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U. S. 522, 528; *Railway Express Agency, Inc.* v. *New York,* 336 U. S. 106, 110; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78–79. But we deal here with a classification based upon the race of the

participants, which must be viewed in light of the historical fact that the central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States. This strong policy renders racial classifications "constitutionally suspect," *Bolling* v. *Sharpe*, 347 U. S. 497, 499; and subject to the "most rigid scrutiny," *Korematsu* v. *United States*, 323 U. S. 214, 216; and "in most circumstances irrelevant" to any constitutionally acceptable legislative purpose, *Hirabayashi* v. *United States*, 320 U. S. 81, 100. Thus it is that racial classifications have been held invalid in a variety of contexts. See, *e. g.*, *Virginia Board of Elections* v. *Hamm*, 379 U. S. 19 (designation of race in voting and property records); *Anderson* v. *Martin*, 375 U. S. 399 (designation of race on nomination papers and ballots); *Watson* v. *City of Memphis*, 373 U. S. 526 (segregation in public parks and playgrounds); *Brown* v. *Board of Education*, 349 U. S. 294 (segregation in public schools).

We deal here with a racial classification embodied in a criminal statute. In this context, where the power of the State weighs most heavily upon the individual or the group, we must be especially sensitive to the policies of the Equal Protection Clause which, as reflected in congressional enactments dating from 1870, were intended to secure "the full and equal benefit of all laws and proceedings for the security of persons and property" and to subject all persons "to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." R. S. § 1977, 42 U. S. C. § 1981 (1958 ed.).

Our inquiry, therefore, is whether there clearly appears in the relevant materials some overriding statutory purpose requiring the proscription of the specified conduct when engaged in by a white person and a Negro, but not otherwise. Without such justification the racial classification contained in § 798.05 is reduced to an invid-

ious discrimination forbidden by the Equal Protection Clause.

The Florida Supreme Court, relying upon *Pace* v. *Alabama, supra,* found no legal discrimination at all and gave no consideration to statutory purpose. The State in its brief in this Court, however, says that the legislative purpose of § 798.05, like the other sections of chapter 798, was to prevent breaches of the basic concepts of sexual decency; [10] and we see no reason to quarrel with the State's characterization of this statute, dealing as it does with illicit extramarital and premarital promiscuity.

We find nothing in this suggested legislative purpose, however, which makes it essential to punish promiscuity of one racial group and not that of another. There is no suggestion that a white person and a Negro are any more likely habitually to occupy the same room together than the white or the Negro couple or to engage in illicit intercourse if they do. Sections 798.01–798.05 indicate no legislative conviction that promiscuity by the interracial couple presents any particular problems requiring separate or different treatment if the suggested over-all policy of the chapter is to be adequately served. Sections 798.01–798.03 deal with adultery, lewd cohabitation and fornica-

---

[10] "Section 798.05, Florida Statutes, under which the defendants were charged, simply prohibits habitual cohabiting of the same room by members of opposite races who are also members of opposite sexes. The terms of Section 798.05, supra, explicitly seek to avoid circumstances wherein there are high potentials of sexual engagement. . . . Section 798.02, Florida Statutes, which prohibits intraracial lewd cohabitation, has generally been interpreted as requiring the additional element of sexual occurrence as distinguished from the provisions of Section 798.05, supra, which only require a high potential of such occurrence. The legislative purpose in enacting both Sections 798.02 and 798.05, supra, is to prevent illegal sexual occurrences. . . . The purpose of the legislature in enacting both Sections 798.02 and 798.05, Florida Statutes, was to prevent such breaches of basic concepts of sexual decency whether committed by interracial or intraracial parties." Brief for Appellee, 55–56.

tion, in that order. All are of general application. Section 798.04 prohibits a white and a Negro from living in a state of adultery or fornication and imposes a lesser period of imprisonment than does either § 798.01 or § 798.02, each of which is applicable to all persons. Simple fornication by the interracial couple is covered only by the general provision of § 798.03. This is not, therefore, a case where the class defined in the law is that from which "the evil mainly is to be feared," *Patsone* v. *Pennsylvania*, 232 U. S. 138, 144; or where the "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies," *Williamson* v. *Lee Optical Co.*, 348 U. S. 483, 489; or even one where the State has done as much as it can as fast as it can, *Buck* v. *Bell*, 274 U. S. 200, 208. That a general evil will be partially corrected may at times, and without more, serve to justify the limited application of a criminal law; but legislative discretion to employ the piecemeal approach stops short of permitting a State to narrow statutory coverage to focus on a racial group. Such classifications bear a far heavier burden of justification. "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. *Yick Wo* v. *Hopkins* [118 U. S. 356]; *Gaines* v. *Canada*, 305 U. S. 337." *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U. S. 535, 541.[11]

---

[11] In the *Skinner* case the Court invalidated on equal-protection grounds Oklahoma's law providing for the sterilization of multiple offenders but exempting offenses arising out of the prohibition laws, the revenue acts, embezzlement or political offenses. The Court said:

"Oklahoma makes no attempt to say that he who commits larceny by trespass or trick or fraud has biologically inheritable traits which he who commits embezzlement lacks. Oklahoma's line between

## II.

Florida's remaining argument is related to its law against interracial marriage, Fla. Stat. Ann. § 741.11,[12] which, in the light of certain legislative history of the Fourteenth Amendment, is said to be immune from attack under the Equal Protection Clause. Its interracial cohabitation law, § 798.05, is likewise valid, it is argued, because it is ancillary to and serves the same purpose as the miscegenation law itself.

We reject this argument, without reaching the question of the validity of the State's prohibition against interracial marriage or the soundness of the arguments rooted in the history of the Amendment. For even if we posit the constitutionality of the ban against the marriage of a Negro and a white, it does not follow that the cohabitation law is not to be subjected to independent examination under the Fourteenth Amendment. "[A]ssuming, for purposes of argument only, that the basic prohibition is constitutional," in this case the law against interracial marriage, "it does not follow that there is no constitutional limit to the means which may be used to enforce it." *Oyama* v. *California,* 332 U. S. 633, 646–647. See

---

larceny by fraud and embezzlement is determined, as we have noted, 'with reference to the time when the fraudulent intent to convert the property to the taker's own use' arises. *Riley* v. *State, supra,* 64 Okla. Cr. at p. 189, 78 P. 2d p. 715. We have not the slightest basis for inferring that that line has any significance in eugenics, nor that the inheritability of criminal traits follows the neat legal distinctions which the law has marked between those two offenses. In terms of fines and imprisonment, the crimes of larceny and embezzlement rate the same under the Oklahoma code. Only when it comes to sterilization are the pains and penalties of the law different. The equal protection clause would indeed be a formula of empty words if such conspicuously artificial lines could be drawn." 316 U. S., at 541–542.

[12] See note 6, *supra.* See also Fla. Const., Art. 16, § 24.

also *Buchanan* v. *Warley,* 245 U. S. 60, 81. Section 798.05 must therefore itself pass muster under the Fourteenth Amendment; and for reasons quite similar to those already given, we think it fails the test.

There is involved here an exercise of the state police power which trenches upon the constitutionally protected freedom from invidious official discrimination based on race. Such a law, even though enacted pursuant to a valid state interest, bears a heavy burden of justification, as we have said, and will be upheld only if it is necessary, and not merely rationally related, to the accomplishment of a permissible state policy. See the cases cited, *supra,* p. 192. Those provisions of chapter 798 which are neutral as to race express a general and strong state policy against promiscuous conduct, whether engaged in by those who are married, those who may marry or those who may not. These provisions, if enforced, would reach illicit relations of any kind and in this way protect the integrity of the marriage laws of the State, including what is claimed to be a valid ban on interracial marriage. These same provisions, moreover, punish premarital sexual relations as severely or more severely in some instances than do those provisions which focus on the interracial couple. Florida has offered no argument that the State's policy against interracial marriage cannot be as adequately served by the general, neutral, and existing ban on illicit behavior as by a provision such as § 798.05 which singles out the promiscuous interracial couple for special statutory treatment. In short, it has not been shown that § 798.05 is a necessary adjunct to the State's ban on interracial marriage. We accordingly invalidate § 798.05 without expressing any views about the State's prohibition of interracial marriage, and reverse these convictions.

*Reversed.*

Mr. Justice Harlan, concurring.

I join the Court's opinion with the following comments.

I agree with the Court that the cohabitation statute has not been shown to be necessary to the integrity of the antimarriage law, assumed *arguendo* to be valid, and that necessity, not mere reasonable relationship, is the proper test, see *ante,* pp. 195–196. *NAACP* v. *Alabama,* 377 U. S. 288, 307–308; *Saia* v. *New York,* 334 U. S. 558, 562; *Martin* v. *Struthers,* 319 U. S. 141, 147; *Thornhill* v. *Alabama,* 310 U. S. 88, 96; *Schneider* v. *State,* 308 U. S. 147, 161, 162, 164; see *McGowan* v. *Maryland,* 366 U. S. 420, 466–467 (Frankfurter, J., concurring).

The fact that these cases arose under the principles of the First Amendment does not make them inapplicable here. Principles of free speech are carried to the States only through the Fourteenth Amendment. The necessity test which developed to protect free speech against state infringement should be equally applicable in a case involving state racial discrimination—prohibition of which lies at the very heart of the Fourteenth Amendment. Nor does the fact that these cases all involved what the Court deemed to be a constitutionally excessive exercise of legislative power relating to a single state policy, whereas this case involves two legislative policies—prevention of extramarital relations and prevention of miscegenation—effectuated by separate statutes, serve to vitiate the soundness of the Court's conclusion that the validity of the State's antimarriage law need not be decided in this case. If the legitimacy of the cohabitation statute is considered to depend upon its being ancillary to the antimarriage statute, the former must be deemed "unnecessary" under the principle established by the cited cases in light of the nondiscriminatory extramarital relations statutes. If, however, the interracial cohabitation statute is considered to rest upon a discrete

state interest, existing independently of the antimarriage law, it falls of its own weight.

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS joins, concurring.

I concur in the judgment and agree with most of what is said in the Court's opinion. But the Court implies that a criminal law of the kind here involved might be constitutionally valid if a State could show "some overriding statutory purpose." This is an implication in which I cannot join, because I cannot conceive of a valid legislative purpose under our Constitution for a state law which makes the color of a person's skin the test of whether his conduct is a criminal offense. These appellants were convicted, fined, and imprisoned under a statute which made their conduct criminal only because they were of different races. So far as this statute goes, their conduct would not have been illegal had they both been white, or both Negroes. There might be limited room under the Equal Protection Clause for a civil law requiring the keeping of racially segregated public records for statistical or other valid public purposes. Cf. *Tancil* v. *Woolls, ante,* at 19. But we deal here with a criminal law which imposes criminal punishment. And I think it is simply not possible for a state law to be valid under our Constitution which makes the criminality of an act depend upon the race of the actor. Discrimination of that kind is invidious *per se.**

---

*Since I think this criminal law is clearly invalid under the Equal Protection Clause of the Fourteenth Amendment, I do not consider the impact of the Due Process Clause of that Amendment, nor of the Thirteenth and Fifteenth Amendments.