JAMES H. GOETZ, Petitioner, v. HON. JAMES T. HARRISON, HON. FRANK I. HASWELL, HON. WESLEY CASTLES, HON. JOHN CONWAY HARRISON, HON. JOHN W. BONNER, as administrative agents of the State of Montana, Respondents.

No. 11768.
Decided December 2, 1969.
462 P.2d 891.

(274)

James H. Goetz, argued, Bozeman, for petitioner.

Robert L. Woodahl, Atty. Gen., appeared, Helena, William McCormick, Asst. Atty. Gen., appeared, Helena, Charles C. Lovell, Asst. Atty. Gen., argued, Great Falls, Robert E. Sullivan, argued, Missoula, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding before this Court wherein the petitioner, James H. Goetz, challenges the law permitting graduates of the law school of the University of Montana to be admitted to practice law without taking the annual bar examination.

The form of the proceeding as well as some of the details are not considered of importance, but some background may help pinpoint our discussion. Petitioner essentially seeks a declaratory judgment declaring section 93-2002, R.C.M.1947, unconstitutional.

Section 93-2002 reads as follows:

"Every applicant for admission as an attorney and counselor must produce satisfactory testimonials of good moral character,

and a certificate of one or more reputable counselors at law that he has been engaged in the study of law for two successive years prior to the making of such application, and undergo a strict examination as to his qualifications by any one or more of the justices of the supreme court. The form and manner of the examination shall be as the justices may, from time to time, determine; provided, however that a diploma from the department of law of the University of Montana at Missoula, or evidence of having completed the course in law of three years of said department, shall entitle the holder to a license to practice law in all the courts of this state, subject to the right of the chief justice of the supreme court of the state to order an examination as in ordinary cases of applicants without such diploma or evidence.''

Section 93-2002 was originally enacted by our legislature in 1895, re-enacted in 1907, amended to its present form in 1915, re-enacted in 1921, and has at all times since 1915 been in effect. Pursuant to this statute, each graduating class of the school of law of the University of Montana has been admitted to practice law over the years.

Petitioner is a graduate of Yale Law School. In October 1968, petitioner took our bar examination but failed to pass. On April 10, 1969, petitioner filed a complaint in district court in Gallatin County naming the five justices of this Court as defendants in which action petitioner sought to have section 93-2002 declared unconstitutional and that this Court be enjoined from admitting Montana law school graduates on motion, the so-called ''diploma privilege''.

Subsequently on August 18, 1969, this Court ordered the district court to dismiss the complaint for want of jurisdiction over the subject matter. (Goetz v. Harrison et al., 153 Mont. 403 457 P.2d 911). In our order, we said in part:

''Section 93-2002 was amended to its present form in 1915, and since that time this Court has carried out and enforced its provisions. This section became more than a legislative enact-

ment. It has been applied as a *rule* of the Montana Supreme Court. The admission and regulation of attorneys in Montana is a matter peculiarly within the inherent power of this Court, subject, of course, to constitutional guaranties, which the Court has always zealously guarded.

"Thus, we are faced with a demand by plaintiff that the district court construe a statute this court has applied for more than 50 years; adjudicate the validity of a rule of this Court; and issue an injunction against the Supreme Court of Montana.

"We are not unwilling that the constitutionality of our rule and the legislative enactment be heard and determined on the merits, in a proper case. Indeed, the matter having been raised, it should perhaps be presented to this Court in an appropriate original proceeding. (This would allow the Court, if it chose, to examine the *wisdom* of the rule, as well as its constitutionality.)"

Subsequently, on October 15, 1969, petitioner filed the present petition. Also, petitioner took and passed our bar examination and was admitted to practice law by this Court on October 30, 1969. In an order made on October 31, 1969, this Court, desiring further information before it assumed original jurisdiction, ordered copies of the petition and other papers served on the Attorney General and upon the Dean of the Law School and invited their appearance at oral argument for or against the relief sought by the petitioner. Oral argument was had on November 13, 1969.

As expressed by petitioner, the issues for review are:

"QUESTIONS PRESENTED:

"I. Whether the 'Diploma Privilege' is dependent for its effect on 93-2002, R.C.M. (a legislative enactment) or on the Rules of the Supreme Court and the traditional power inherent in the Supreme Court to govern matters pertaining to the admission to practice law.

"II. Whether the 'Diploma Privilege' conveys a privilege on one class of persons to the detriment of another class of persons; and whether such detriment amounts to discrimination tantamount to an unconstitutional denial of the Equal Protection of the Laws.

"III. Whether the 'Diploma Privilege' as a public policy is a wise and good public policy."

The first question posed is not particularly germane to the problem since whether section 93-2002 be deemed a statute or a rule of the court the same considerations would apply. However, the legislature and this Court have left the statute undisturbed for over half a century. In the rules of the Supreme Court establishing the Commission on Practice, the preamble states, in part:

"This Court declares that it possesses original and exclusive jurisdiction under the provisions of Chapter 20 of Title 93, R.C.M.1947, in addition to its inherent jurisdiction, in all matters involving admission of persons to practice law in this state and of the disciplining of such persons. * * *"

As to the second question, petitioner suggests that there are fact issues to be resolved. We are not aware of any fact issue in dispute. Since the exclusive jurisdiction in this field is in this Court, all facts and matters herewith concerned are peculiarly within this Court's own records and knowledge. Our rules provide two methods of admission to the bar; one by motion, the other by examination.

Those admitted on motion include two general categories, attorneys admitted to practice in other states and the District of Columbia and graduates of the Law School of the University of Montana. All others are admitted by examination. In each of the two general categories, (1) by motion or (2) by examination, provision is made in our rules for further examination if this Court, or the Chief Justice thereof, so determines.

Petitioner here attacks the motion category only as it applies to University of Montana graduates. It appears obvious though

that attorneys from other states, some of whom may not have passed a bar examination, would be equally subject to the same attack.

Montana has for many years been quite liberal in allowing persons to qualify for the examination. We have not required graduation from an accredited law school in the past, although we have changed the rules to so require, effective January 1, 1970. Self-study, correspondence schools, and nonaccredited schools have all been accepted, if certain other qualifications are met.

Petitioner's brief sets up the constitional question in this manner:

"II. THE APPLICATION OF THE DIPLOMA PRIVI-LEGE IN MONTANA UNCONSTITUTIONALLY DENIES PE-TITIONER, AND OTHERS IN HIS CLASS, EQUAL PRO-TECTION OF THE LAWS.

"A. THE EQUAL PROTECTION FRAMEWORK:

"Manifestly, all public laws and policies cannot have univer-sal indiscriminate application. Classification which results in different treatment by the law of different groups of persons cannot be avoided.

"Constitutional limits, however, are placed on the power of a state to make such discriminations. The Federal Constitution, through the Fourteenth Amendment, prohibits a state from denying ' * * * to any person * * * the Equal Pro-tection of the Laws.'

"The Equal Protection limitation applies equally as well to classifications relating to the practice of law as it does to other public classifications. While a state has broad powers to regu-late the practice of law within its borders, it 'cannot ignore constitutional rights of individuals.' Brotherhood of Railroad Trainmen v. Va. ex rel. Va. State Bar, 377 U.S. 1 [84 S.Ct. 1113, 12 L.Ed.2d 89] (1964). 'A state cannot exclude a person from the practice of law * * * in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the

Fourteenth Amendment.' Schware v. Board of Bar Examiners, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed2d 796]. The right to practice law is not 'a matter of grace and favor.' Ex-Parte Garland, 4 Wall. 333, 379 [18 L.Ed. 366].

''In determining whether a classification denies Equal Protection the basic inquiry that must be made by the courts is whether the classification drawn in a statute is reasonable in light of its statutory purpose. Such statute still may be invalidated despite its apparent legitimate purpose, if it was motivated by partiality or prejudice. Loving v. Virginia, 388 U.S. 1, 11 [87 S.Ct. 1817, 18 L.Ed.2d 1010] (1967), (the doctrine of 'suspect classifications'). See also McGlaughlin [McLaughlin] v. Florida, 379 U.S. 184 [85 S.Ct. 283, 13 L.Ed2d 222], 'Classifications must always rest upon some difference which bears a reasonable and just relation to the act in respect to which classification is proposed * * *''

The foregoing position of petitioner poses the question as being one of reasonableness of the classification. That is, have we reasonably classified the two general categories, those admitted by motion and those admitted by examination. As to those admitted by motion, petitioner does not attack the attorneys admitted in other states. This Court accepts the judgment of other states' licensing authorities as to the qualifications to practice law. We find this entirely reasonable.

As to the graduates of our only state accredited law school, again we look to the reasonableness of the classification. Montana is a relatively small state in terms of population. Members of this Court are and have been on personal relationship with the faculty of the law school over the years. We hire annually three to five graduates as law clerks. We interview many more. We are ordinarily personally acquainted with student body, faculty, and curriculum to an extent that we can, in complete good faith gauge the fitness of the graduating students as a body, relying on the grading system of the faculty for scholarship.

Comparatively, as to all others taking the Bar examination this personal relationship and resultant knowledge does not exist nor can it; we simply do not have the opportunity to gauge in any manner the scholastic or mental abilities of these applicants for admission except through our process of examination. In our process of examination the legislature has provided for a board of bar examiners to be appointed by this Court. This board is comprised of outstanding members of the legal profession in whom this Court imposes great confidence to fairly and fully test applicants, such as petitioner, for competence and fitness to practice law. Such examination is prepared by the board members. This Court has kept in constant touch with the system, both for its adequacy and for fairness. In our considered judgment, our board of bar examiners does an outstanding job.

However, we have the same opportunity to keep in touch with the educational and testing process of the law school at the University of Montana, and in gauging the results in as good a manner as is humanly possible.

In all methods of screening, testing, and passing on the qualifications and fitness of applicants for our bar, the ultimate goal is to provide competent legal service to the public. In the final analysis, it is the protection of the public that determines all of our methods of passing on the qualifications and fitness to practice law.

Thus, when we go back to our inquiry as to the reasonableness of the classifications of the two groups, admitted to the practice of law, that reasonableness is in our opportunity and ability to pass judgment upon the individual's standing.

Has an individual, then, such as petitioner, been denied equal protection of the laws or rules, by being subjected to our considered judgments? Admittedly, in any grading system, either in law school examinations or bar examinations, an arbitrary passing grade is established. That is, it is arbitrary in the sense that in the minds of those establishing the grade, some cut-off or standard is set. This has no relationship however to

"equal protection of the laws" as set forth in the 14th Amendment to the Constitution of the United States. We hold therefore that the classification of graduates of the law school at the University of Montana is a reasonable one and is not constitutionally involved.

Petitioner discusses at length the reason for the 'diploma privilege', finally suggesting that the burden of argument should be on those defending the system. Justice (now United States Senator) Metcalf of this Court, in the year 1952, wrote an interesting and factual article appearing in 13 Montana Law Review 1, entitled "A Survey on Admission to Practice Law in Montana". Some of his remarks are as follows:

"The main arguments pro and con on the 'diploma privilege' have been published and there is no point in reviewing them here.

"There are, however, some special reasons for retaining the 'diploma privilege' for the graduates of Montana State University law school.

"The standards, both for pre-legal and actual law study are higher for graduates of Montana law school than for applicants to take the bar examination. This is especially true with respect to the lenient interpretation given by the court to 'equivalent' pre-legal study. But the three-year law study required for graduation sets a much higher standard than two years of study loosely supervised in a law office or self-study at night. The place to begin to tighten up admission requirements would appear to be in establishing stricter standards for permission to take the bar examination.

"Then, too, Montana has a relatively small law school and it is the only one in the state. The Chief Justice is well acquainted with the instructors, familiar with the type of instruction given at the school, and able to determine accurately that standards are being maintained. The Montana graduates who appear before the court measure up in training and ability as lawyers with the graduates of out-of-state schools who are practicing in the

state. In larger states this close acquaintance with the law school and observation of its graduates would not exist. The Chief Justice would be prevented from watching and comparing the local graduates with those of other approved schools, and the system might break down.

"The success of former Montana students in the bar examination also indicates that the University is maintaining its standards. During the period 1936-1951 seven students who had completed two years of study at Montana State University [now University of Montana] law school took the bar examination. Two of the seven had less than a passing average in law school. The remaining five were students of relatively high rank. All five of the students who were maintaining a passing average were successful the first time in the bar examination. One of the other students was successful the first time, and the other passed on the second attempt. During the same period two applicants were successful in passing the bar examination who had attended the Montana law school for three years but had not graduated. Taken along with other evidence these results indicate that a man who is able to graduate from the Montana law school is able to pass the bar examinations.

"Probably the most serious criticism of the policy of admitting Montana graduates without examination is that the members of the court are passing off onto the faculty of the law school the duty of eliminating the unqualified. Certainly the teaching profession does not want this responsibility nor does the Montana law school need any favoritism to attract students. But under our present system with a small amount of money to devote to bar examinations and with a board of bar examiners whose members are already required to contribute a great deal of time and energy to their task, it is not the suitable time for the court to more than double the burden of the bar examiners and relieve the law school faculty of the responsibility that they have heretofore borne."

Justice Metcalf's observations 17 years ago are still apt except for the statistics. Our law school has since raised its admission standards, requiring four years pre-legal study.

Heretofore, our discussion has dealt not only with the claimed unconstitutionality of the so-called diploma privilege, but likewise with petitioner's third question; that is—as to the wisdom of the rule. Petitioner argues, in effect, that since only four states still retain the diploma privilege (Mississippi, Montana, West Virginia, and Wisconsin), a drop from 16 states in 1890, that such fact is pertinent to the ''reasonableness of the classification'' and also to the wisdom of it. Certainly trends throughout the nation are of importance. In recent years we have adopted many new approaches to the practice of law, new civil procedure rules, new criminal procedure rules, a commission on practice, new appellate procedure rules, and more recently new rules on admission to practice which will become effective January 1, 1970. We shall constantly strive for improvement. Should the day come that our confidence in the law school at the University of Montana is shaken as to an individual or collectively, we may well choose to re-examine our rules.

Additionally, petitioner urges that since bar examinees are examined on the subjects of unsecured transactions, oil and gas law, mining law, and water law whereas these courses are elective at the Montana law school, this poses an unfair advantage, or put another way, an unfair discrimination. Certainly our system is not perfect; but to test on the various legal subjects pertinent to our legal practice in Montana is not unreasonable. Neither is a comparison between questions or tests between individual years, as to their ease or difficulty, a pertinent inquiry.

Further, petitioner urges that it is bad public policy and this Court should be sensitive to ''public feeling'' in considering the wisdom of the rule. We, an elective supreme court, certainly cannot claim insensitivity to ''public feeling''; but, in view of the long standing declared legislative policy reflecting the will

of the people, we are not prone to be impressed with an argument about. bad public policy.

Finding, as we have, that no constitutional rights of petitioner have been infringed; and declining to determine a lack of wisdom in our rule at this time, we order the petition herein dismissed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON and HASWELL, concur.