**William R. POWELL, Plaintiff,**

v.

**DEPARTMENT OF CORRECTIONS, STATE OF OKLAHOMA, et al., Defendants.**

**Nos. 85–C–820–C, 85–C–816–B.**

United States District Court, N.D. Oklahoma.

Feb. 20, 1986.

William R. Powell, pro se.

Michael C. Turpen, Atty. Gen. of Oklahoma, Robert A. Nance, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## ORDER

BRETT, District Judge.

Plaintiff William R. Powell has brought an action pursuant to 42 U.S.C. § 1983 in Case No. 85–C–820–C, wherein the named Defendant is the Department of Corrections. The same Plaintiff, in Case No. 85–C–816–B, filed an application for a writ of mandamus raising issues similar to those in Plaintiff's § 1983 claim. By Order of the Court these cases have been consolidated.

In order to state a claim under 42 U.S.C. § 1983 Plaintiff must establish that Defendants, acting under color of state law, deprived Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiff alleges (1) that he is segregated from the general prison population; (2) that he is denied the right to visit with his family; (3) that he is not allowed to attend worship services; (4) that he is denied his rights to equal protection in that no other homosexual men have been removed from the general population and tested for the same antibody; (5) that he is denied adequate physical exercise; (6) that he is under strict supervision during exercise; and (7) that he has been denied access to a law library. Plaintiff's request for relief includes (1) release from the custody of the Department of Corrections; (2)

allowing Plaintiff to return to the general population of the institution; (3) transfer to a minimum security institution; and (4) damages in the amount of $105,000.00. In his application for writ of mandamus Plaintiff also requests that he be classified for work release.

Following a telephone status conference before the Magistrate the Defendants were ordered to submit an answer together with a special report no later than 60 days from the date of the Order, October 29, 1985. On January 2, 1986 Plaintiff filed a motion for default judgment on the grounds that Defendants had failed to answer or plead as ordered by the Court. It appears that the docket sheet in this case erroneously states that Defendants were given until November 29, 1985 in which to submit their answer and special report; however, the Order Requiring Special Report actually gave Defendants until December 30, 1985 to file their report. Defendants have complied with this court's order by timely filing their answer and special report. Plaintiff's motion for entry of default judgment is therefore denied.

The Special Report prepared by the Department of Corrections (D.O.C.) indicates that upon being received into D.O.C. custody Plaintiff, an admitted homosexual, underwent a routine medical examination during which he informed the D.O.C. staff physician that he had possibly been exposed to the HTLV III virus. (HTLV III has been identified as the cause of Acquired Immune Deficiency Syndrome). A test was performed on Plaintiff which indicated positive for exposure to the virus. Thereafter Department of Corrections officials determined that it was necessary to isolate Plaintiff from the general prison population to prevent a possible spread of the AIDS virus and to protect Plaintiff from the risk of assault by other inmates. The action was not taken for punitive reasons.

■ Plaintiff complains that he is being segregated from the general population. Plaintiff, however, does not have a Federal constitutional right to be placed in the general prison population. The United States Supreme Court in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) considered a similar prisoner complaint. The prisoner respondent in *Hewitt* had been removed from the general prison population and confined to administrative segregation within the prison pending an investigation into his role in a prison riot. Justice Rehnquist, writing for the Court, reemphasized its position that prison officials have broad administrative and discretionary authority over the prisons they manage. Quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," the court rejected the argument that the Due Process clause implicitly creates an interest in being confined in the general population rather than in administrative segregation quarters. 459 U.S. at 466–67, 103 S.Ct. at 868–69.

■ As long as the conditions or degree of confinement is within the purview of the sentence imposed on him and is not otherwise violative of the constitution, the Due Process clause does not subject an inmate's treatment by prison authorities to judicial review. 459 U.S. at 468, 103 S.Ct. at 869–70.

■ The decision to segregate Plaintiff from other inmates was based upon legitimate objectives: to prevent the possible spread of a deadly infectious disease and to protect Plaintiff from assault by other inmates. The conditions of Plaintiff's isolated confinement do not violate any right created by the U.S. Constitution. The Special Report shows that he is provided limited access to all programs and services at the institution. He is allowed to work in the infirmary. The Chaplain visits the medical unit once a week and upon request. Plaintiff is allowed to exercise both in the medical unit and out of doors when weather permits. Defendants deny that Plaintiff is not being allowed access to visitation and have submitted to the Court a page from a recent visitor's log documenting a Septem-

ber 21st visit by Plaintiff's parents. Since Plaintiff does not have a constitutional right to be placed in the general population and the conditions of Plaintiff's confinement are not violative of his constitutional rights, Plaintiff's claim on this basis should be denied.

Having considered Plaintiff's claim that his first amendment freedom of religion rights are being violated, the Court finds such claim to be without merit. Prison regulations which are alleged to violate prisoners' first amendment rights must be analyzed in terms of the legitimate policies and goals of the institution involved. *Pell v. Procunier*, 417 U.S. 817 at 822, 94 S.Ct. 2800 at 2804, 41 L.Ed.2d 495 (1974); *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

Plaintiff contends that his first amendment rights have been violated in that he is prohibited from attending group worship services. The Supreme Court has noted that many first amendment associational rights must be curtailed if in the informed discretion of prison officials, such associations would likely result in disruption to prison order. *Jones v. North Carolina Prison Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

█ The Court finds that the restrictions placed on Plaintiff's right to worship are reasonable and in keeping with the prison's goal of maintaining the health of the prisoners and in protecting this Plaintiff from threatened harm. Plaintiff has not been denied his right to worship. In fact, he has regular access to the prison chaplain. The fact that he may not worship with the rest of the prison population does not, under these circumstances, rise to the level of a constitutional violation.

█ Plaintiff further asserts that he has been denied equal protection of law because no other homosexual male has been removed from the general population and tested for the HTVL III antibody. Equal protection requirements will have been met if all members of the class (inmates who are known carriers of HTVL III) are treated equally and if the classification is not arbitrary. *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Plaintiff's classification is based upon the presence of HTVL III and not on his sexual orientation. Prison officials state that they do not, as a matter of policy, examine every male homosexual prisoner for the HTVL III virus. Plaintiff was tested for the antibody after he advised the medical staff that he may have been exposed to HTVL III. Plaintiff has not shown that he is treated any differently from other prisoners who are also HTVL III carriers or from other prisoners who are segregated from the general population for medical reasons. Therefore, Plaintiff's Equal Protection claim must be denied.

Plaintiff further contends that he has been denied access to the courts as a result of Defendants' conditioning his transfer to an institution with a law library on Plaintiff's continued segregation from the general population while using the law library. Plaintiff states the he declined Defendants' transfer offer "under mental duress."

█ The constitutional right of access to the courts requires prison officials to provide prisoners with adequate law libraries or adequate assistance of persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The Supreme Court in *Bounds* upheld North Carolina's plan which established seven law libraries across the state then transferred prisoners upon request to institutions containing a library. A similar plan is implemented in Oklahoma. The fact that Plaintiff turned down the offer to transfer him to an institution with library facilities does not render the state's law library program inadequate. The Court finds that Plaintiff's right of access to the courts has not been violated.

Having carefully reviewed Plaintiff's Complaint, the Court finds that Plaintiff has failed to allege any facts which amount to a deprivation of his rights guaranteed under the Constitution or laws of the United States. It is therefore Ordered that Defendant's Motion to Dismiss Plaintiff's

civil rights complaint and petition for Writ of Mandamus be and is hereby granted.