GRIFFIN, Circuit Judge,
dissenting.
Today’s decision is the antithesis of the Equal Protection Clause of the Fourteenth Amendment. The post-Civil War amendment that guarantees equal protection to persons of all races has now been con *512 strued as barring a state from prohibiting discrimination on the basis of race. As the United States Supreme Court has observed, “[i]t would be paradoxical to conclude that by adopting the Equal Protection Clause of the Fourteenth Amendment, the voters of the State thereby had violated it.” Crawford v. Bd. of Educ., 458 U.S. 527, 535, 102 S.Ct. 3211, 73 L.Ed.2d 948 (1982). Yet the majority has effectively so concluded in striking down a portion of Michigan’s Proposal 2 (Mich. Const, art. I, § 26). I join Judge Gibbons’ dissent, except for Section III, and write separately to emphasize that the “political structure” doctrine is an anomaly incompatible with the Equal Protection Clause. I urge the Supreme Court to consign this misguided doctrine to the annals of judicial history.
The Equal Protection Clause provides that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const. amend. 14, § 1. Under its application, a state law is subject to strict scrutiny when it explicitly distinguishes between individuals on the basis of race. See Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 279-80, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (plurality opinion); Personnel Adm’r of Mass. v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); McLaughlin v. Florida, 379 U.S. 184, 191-92, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Such express racial classifications are suspect because, “[ajbsent searching judicial inquiry[,] ... there is simply no way of determining what classifications are ‘benign’ or ‘remedial’ and what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.” City of Richmond v. J.A. Croson Co., 488 U.S. 469, 493, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (plurality opinion); see also id. at 520, 109 S.Ct. 706 (Scalia, J., concurring in judgment).
Facially neutral laws, on the other hand, warrant strict scrutiny only if they are “motivated by a racial purpose or object,” Miller v. Johnson, 515 U.S. 900, 913, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995), or are “ ‘unexplainable on grounds other than race.’ ” Shaw v. Reno, 509 U.S. 630, 643, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (quoting Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)); see also Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (“Standing alone, ... [disproportionate impact on a racial minority] does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.”) (internal citation omitted).
The ill-advised “political structure” doctrine employed by the majority in this case was crafted by the Supreme Court more than one hundred years after the ratification of the Fourteenth Amendment. Before today, the cases fitting its mold numbered three: Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969); Washington v. Seattle Sch. Dist. No. 1, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); and Lee v. Nyquist, 318 F.Supp. 710 (W.D.N.Y.1970) (three-judge court), summarily aff'd, 402 U.S. 935, 91 S.Ct. 1618, 29 L.Ed.2d 105 (1971). The infrequent use of the doctrine is not surprising given its lack of a constitutional basis. It replaces actual evidence of racial motivation with a judicial presumption and, hence, is an aberration inconsistent with the Fourteenth Amendment.
The laws at issue in Hunter and Seattle were both facially neutral. See Hunter, 393 U.S. at 391, 89 S.Ct. 557 (noting that “the law on its face treats Negro and white, Jew and gentile in an identical manner”); Seattle, 458 U.S. at 471, 102 S.Ct. 3187 (referring to the “facial neutrality” of *513 the state legislation). Yet, in each case, the Supreme Court held that strict scrutiny applied without any need for the respective plaintiffs to show that the laws were enacted as a result of discriminatory intent or were inexplicable on grounds other than race. It simply declared that there was an ‘“explicitly racial classification’ ” where the prior law inured to the benefit of racial minorities, and the newly enacted law moved the applicable decision-making process to a more remote level of government. Seattle, 458 U.S. at 468, 102 S.Ct. 3187 (quoting Hunter, 393 U.S. at 389, 89 S.Ct. 557).
These decisions are justifiably characterized as “jurisprudential enigmas that seem to lack any coherent relationship to constitutional doctrine as a whole.” David J. Baron, The Promise of Cooley’s Cities: Traces of Local Constitutionalism, 147 U. Pa. L. Rev. 487, 561 (1999); see also Daniel P. Tokaji, First Amendment Equal Protection: On Discretion, Inequality, and Participation, 101 Mich. L. Rev. 2409, 2476 (2003) (“It is therefore easy to view these cases as constitutional oddballs, difficult or impossible to explain in light of accepted equal protection principles.”). “In the absence of a federal constitutional violation requiring race-specific remedies, a policy of strict racial neutrality by a State ... violate[s] no federal constitutional principle.” Seattle, 458 U.S. at 491, 102 S.Ct. 3187 (Powell, J., dissenting).
Moreover, as first noted by Justice Powell, the political structure doctrine unconstitutionally suspends our normal and necessary democratic process by prohibiting change when a lower level of state government has acted in a way that arguably benefits racial minorities. Id. at 494-96, 102 S.Ct. 3187 (Powell, J., dissenting) (“The political process in Washington, as in other States, permits persons who are dissatisfied at a local level to appeal to the state legislature or the people of the State for redress,” but “[ujnder today’s decision this heretofore undoubted supreme authority of a State’s electorate is to be curtailed whenever a school board — or indeed any other state board or local instrumentality — adopts a race-specific program that arguably benefits racial minorities.”).
In addition, the majority in the present case eschews a “traditional” Equal Protection Clause analysis by deeming its well-established principles unnecessary to the legal equation. I respectfully disagree and would hold that by conventional equal protection standards, Proposal 2 passes constitutional muster. “A law that prohibits the State from classifying individuals by race or gender a fortiori does not classify individuals by race or gender.” Coal. for Econ. Equity v. Wilson, 122 F.3d 692, 702 (9th Cir.1997). In my view, racial discrimination and racial preference are synonymous. In the realm of a finite number of classroom seats, the preference given one person based upon his race is the discrimination inflicted upon another based upon his. Discrimination on the basis of race is racial discrimination, whether it is euphemistically called a “preference” or something else. In affirming California’s substantially similar Proposition 209, which banned race and gender preferences, the Ninth Circuit in Wilson eloquently stated:
When the government prefers individuals on account of their race or gender, it correspondingly disadvantages individuals who fortuitously belong to another race or to the other gender. “Consistency does recognize that any individual suffers an injury when he or she is disadvantaged by the government because of his or her race.” Adarand, 515 U.S. at 230, 115 S.Ct. at 2114. Proposition 209 amends the California Constitution simply to prohibit state discrimination against or preferential treatment to any person on account of race or gender. *514 Plaintiffs charge that this ban on unequal treatment denies members of certain races and one gender equal protection of the laws. If merely stating this alleged equal protection violation does not suffice to refute it, the central tenet of the Equal Protection Clause teeters on the brink of incoherence.
Wilson, 122 F.3d at 702; cf. Coal. to Defend Affirmative Action v. Granholm, 473 F.3d 237, 250 (6th Cir.2006) (“If the Equal Protection Clause gives heightened scrutiny to [gender-based classifications], a State acts well within the letter and spirit of the Clause when it eliminates the risk of any such scrutiny by removing gender classifications altogether in its admissions programs.”) (internal quotation marks omitted).
In a footnote, the majority superficially acknowledges, but does not discuss, the circuit split it creates in declining to follow the Ninth Circuit decisions upholding the constitutionality of analogous Proposition 209. See Wilson and Coal. to Defend Affirmative Action v. Brown, 674 F.3d 1128 (9th Cir.2012). I would adopt the persuasive reasoning of Wilson and hold that, in amending their state constitution to prohibit racial discrimination and “preferential treatment,” the citizens of Michigan did not violate the Equal Protection Clause of the Fourteenth Amendment, but rather enshrined its principles into the Michigan Constitution. Like Proposition 209, Michigan’s proscription of racial preference, “as a matter of law and logic, does not violate the Equal Protection Clause in any conventional sense.” Wilson, 122 F.3d at 702.
Finally, in an effort to avoid confusion and aid further review, I note the limits of the majority’s holding. My colleagues do not declare Mich. Const, art. I, § 26 unconstitutional in its entirety. Rather, their holding is limited to “racial minorities” and our court’s declaration “[f]inding those provisions of Proposal 2 affecting Michigan’s public colleges and universities unconstitutional. ...” Thus, the other provisions of Mich. Const, art. I, § 26 that prohibit discrimination and preferential treatment on the basis of sex, ethnicity, or national origin in the operation of public employment, public education, and public contracting, survive this court’s ruling. Further, the Michigan constitutional prohibitions against discrimination or preferential treatment based on race, except in the operation of public colleges and universities regarding “racial minorities,” remain in effect. In this regard, art. I, § 26(7) contains a severability clause: “Any provision held invalid shall be severable from the remaining portions of this section.”
I caution that because the term “racial minorities” is not defined by the majority opinion, the class of persons benefitting from it is unclear and will be a potent source of litigation were it allowed to stand. Under today’s en banc decision, not all persons are entitled to the equal protection of the laws.
For these reasons, I would affirm the district court and therefore respectfully dissent.